[No. A070202. First Dist., Div. Two. Nov. 30, 1995.]

In re RAMON A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RAMON A., Defendant and Appellant.

## Counsel

Dean M. Herman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Ronald S. Matthias and Eric D. Share, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**PHELAN, J.**—The juvenile court placed appellant Ramon A. in a county camp facility based in part on a finding that he violated Penal Code section 12034, subdivision (a), which makes it a misdemeanor for a driver "knowingly to permit any other person to carry into or bring into the vehicle a firearm in violation of Section 12031 of this code or Section 2006 of the Fish and Game Code." (Pen. Code, § 12034, subd. (a).) Appellant contends that he could not properly be found to have violated section 12034 without proof that he knew the firearm in question was loaded. We reject this contention.

### Background

On March 21, 1995, subsequent and supplemental petitions were filed pursuant to Welfare and Institutions Code sections 602 and 777 charging appellant with seven violations of criminal law, including unlawfully taking a vehicle (Veh. Code, § 10851) and knowingly permitting another to bring a firearm into his vehicle (Pen. Code, § 12034). Evidence at the jurisdictional hearing established that on March 18, 1995, officers pulled over a speeding car occupied by several youths and driven by appellant. The car had been taken the previous day from in front of the owner's house without her permission. There was a .22-caliber rifle on the rear floorboard of the car, and a single-shot shotgun on the floor in front of the forward passenger seat. Both weapons were loaded.

During the jurisdictional hearing appellant admitted the violation of Vehicle Code section 10851. Four other counts were dismissed on the motion of the district attorney. Of the remaining two counts, the court found unproven a charge that appellant possessed the shotgun. However, the court

sustained the allegation that appellant violated Penal Code section 12034. The court ordered appellant placed in Los Cerros Camp, fixing the maximum time of confinement at four years and two months. Appellant filed a timely notice of appeal.

## ANALYSIS

Penal Code section 12034, subdivision (a) (section 12034(a)), makes it a misdemeanor "for a driver of any motor vehicle . . . knowingly to permit any other person to carry into or bring into the vehicle a firearm in violation of Section 12031 of this code or Section 2006 of the Fish and Game Code." Penal Code section 12031, subdivision (a)(1) (section 12031(a)(1)), makes it a misdemeanor to "carr[y] a loaded firearm on [the offender's] person or in a vehicle while in any public place or on any public street . . . ." Fish and Game Code section 2006 declares it unlawful "to possess a loaded rifle or shotgun in any vehicle . . . which is standing on or along or is being driven on or along any public highway or other way open to the public."

 We must determine the scope to be given the word "knowingly" as it appears in section 12034. Appellant contends that the driver must know the facts which make the passenger's conduct unlawful, i.e., that the gun possessed by the passenger is loaded. Respondent contends that the crime itself is complete when the driver, with knowledge that the passenger possesses a firearm, permits the passenger to enter the vehicle. In this view, the reference to section 12031(a)(1) and Fish and Game Code section 2006 serves merely to require that the gun in fact be loaded, not that the driver know it is loaded.

In contending that the driver must know of the facts constituting the passenger's violation of section 12031 and Fish and Game Code section 2006, appellant cites Penal Code section 7, subdivision (5): "The word 'knowingly' imports . . . knowledge that the facts exist which bring the act or omission within the provisions of this code." The "act or omission" in question, however, is the offender's—here, the driver's, not the passenger's. Therefore the meaning of "knowingly" in section 12034 is that the driver must know "that the facts exist which bring [the act of permitting the passenger to enter the car] within the provisions of [section 12034]." (Pen. Code, § 7, subd. (5).) This gloss does nothing to illuminate the question whether the driver must know the passenger's gun is loaded, or need only know that the passenger is armed.

Appellant also cites *People* v. *Corkrean* (1984) 152 Cal.App.3d 35, 39 [199 Cal.Rptr. 375], where the court referred in passing to section 12034 as placing a prohibition on "knowingly permitting another to carry a loaded

weapon in one's car." (Italics omitted.) The issue before the court, however, was whether a defendant could be convicted of possessing a machine gun without knowledge that the weapon he possessed was capable of operating in a manner which met the statutory definition. In concluding that the applicable statute did not require such knowledge, the court contrasted it to other statutes, including section 12034, which explicitly impose a knowledge requirement. The court was not faced with any contested issue concerning the meaning or effect of section 12034, and had no occasion to parse its terms to determine the precise nature of the knowledge it requires. Its reading of section 12034 was pure dictum.

Such evidence of legislative history as we have found is equivocal with respect to the meaning of the term "knowingly" in section 12034.[1] In a letter transmitting the original bill to the Governor for signature, its sponsor, Senator Ayala, wrote that the bill "makes it a misdemeanor for a driver or owner of any vehicle knowingly to permit any person, or for the owner or driver himself, to bring unlawfully a loaded firearm into the vehicle . . . ." (Letter dated Aug. 24, 1977, in Governor's Chaptered Bill file (1977-1978 Reg. Sess.) ch. 528.) This statement, however, while employing the adjective "loaded," is burdened with the same ambiguity as the statute itself as to the sweep of the adverb "knowingly." The California Highway Patrol explained its support for the bill in part by stating, "The driver or owner of a vehicle would be reluctant to allow a person to possess a loaded firearm in his/her vehicle . . . ." (Cal. Highway Patrol, Enrolled Bill Rep., Sen. Bill No. 811 (1977-1978 Reg. Sess.) Aug. 24, 1977.) Again, however, the statement is far from plain with respect to the required tenor of the owner's knowledge. Perhaps the least equivocal statement in support of appellant's position came from the Department of Fish and Game, which wrote, "Under current law, the owner of a motor vehicle is not specifically designated as a principal in a violation, even though he might know that a passenger in his car possessed a loaded firearm, or loan his car to an individual with full knowledge that the individual possessed a loaded firearm in violation of the law. [¶] This bill would properly place a well-deserved burden upon motor vehicle owners who might loan their vehicles to other persons, or have other persons as passengers, knowing that such persons possessed loaded rifles, pistols, or shotguns." (Dept. of Fish & Game, Enrolled Bill Rep., Sen. Bill No. 811 (1977-1978 Reg. Sess.) Aug. 25, 1977.)

This statement of the gravamen of the bill, however, seems in tension with a statement from the office of the Legal Affairs Secretary to the Governor,

---

[1]We take judicial notice of the legislative materials cited here. (See *People* v. *Bravo* (1990) 219 Cal.App.3d 729, 734, fn. 4 [268 Cal.Rptr. 486]; *Southland Mechanical Constructors Corp.* v. *Nixen* (1981) 119 Cal.App.3d 417, 428, fn. 7 [173 Cal.Rptr. 917], disapproved on another point in *Laird* v. *Blacker* (1992) 2 Cal.4th 606, 617 [7 Cal.Rptr.2d 550, 828 P.2d 691].)

which as pertinent here stated only that the bill would not impose strict liability on the owner or driver because "[t]he owner must 'knowingly permit' the firearm in the vehicle." (Legal Affairs Secretary, Enrolled Bill Rep., Sen. Bill No. 811 (1977-1978 Reg. Sess.) Aug. 30, 1977.) ▟ ██ In later years the gravamen of the bill was repeatedly restated in connection with amendments not relevant here in themselves.[2] The vast majority of these restatements omit any reference to the loaded character of the gun and suggest that culpability flows from knowledge that the gun is present. (See Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 766 (1987-1988 Reg. Sess.) Sept. 10, 1987 ["Existing law makes it a crime for the driver of any motor vehicle . . . to knowingly permit any other person to carry or bring into the vehicle a firearm, as specified."]; Dept. of Finance, Enrolled Bill Rep., Assem. Bill No. 4006 (1985-1986 Reg. Sess.) Sept. 4, 1986 [to same effect]; Youth and Adult Correctional Agency, Enrolled Bill Rep., Assem. Bill No. 4006 (1985-1986 Reg. Sess.) Sept. 10, 1986 [same]; Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 4006 (1985-1986 Reg. Sess.) [same]; Cal. Highway Patrol, Enrolled Bill Rep., Assem. Bill No. 766 (1987-1988 Reg. Sess.) Sept. 18, 1987 [same]; Dept. of Finance, Enrolled Bill Rep., Assem. Bill No. 766 (1987-1988 Reg. Sess.) Sept. 18, 1987 [same]; but see concurrence in Sen. Amend. to Assem. Bill No. 4006 (1985-1986 Reg. Sess.) Aug. 30, 1986 ["Currently, it is a misdemeanor . . . to permit another to carry or fire a loaded firearm from a motor vehicle"].)

More persuasive than the various statements of the statute's gravamen is the unequivocal evidence concerning the purpose of the enactment. As Senator Ayala wrote in 1977, "I introduced Senate Bill 811 because of the problems we have been having in my district and all over the State with people shooting from cars. I feel, if we can put a greater responsibility on the owner of the vehicle and the driver of the vehicle, we might slow down this type of crime . . . . [¶] This bill would . . . be beneficial in curtailing juvenile gang shootings." (Letter dated Aug. 24, 1977, in Governor's Chaptered Bill file (1977-1978 Reg. Sess.) ch. 528.) By 1987 the targeted phenomena had acquired a popular name—"drive-by shootings"—and Assemblywoman Waters, who sponsored the 1987 amendments to the bill, wrote to the governor of their devastating impact: "Drive-by gang shootings threaten the fundamental rights of the public to feel physically secure when walking the streets of our cities. In parts of Los Angeles people are literally afraid to leave their homes because of the intimidating presence of street gangs." (Letter dated Sept. 16, 1987, in Governor's Chaptered Bill file (1987-1988 Reg. Sess.) ch. 1147.)

---

[2] "'Although a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act, that expression may properly be considered together with other factors in arriving at the true legislative intent existing when the prior act was passed.' [Citations.]" (*Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1137 [203 Cal.Rptr. 886].)

This legislative objective—to deter drive-by shootings by making an owner or driver criminally responsible for the presence of loaded guns in the vehicle—cannot be effectively served if conviction under section 12034 requires proof of knowledge that the gun was loaded. The fact that a gun is loaded is rarely evident without inspection. Even if the driver possesses such knowledge, it can only be proven by an admission, or by evidence that another person told the driver the gun was loaded, that the act of loading occurred in the driver's presence, or that the driver acquired such knowledge from some other event, such as the gun's being fired. Rare indeed will be the prosecution under section 12034 in which any such evidence is available. As a practical matter, then, appellant's reading would render the statute largely impotent to achieve its avowed purpose.

We recognize that where a penal statute is reasonably susceptible of two constructions, ". . . the court must ordinarily adopt the construction more favorable to the offender." (*People* v. *Simon* (1995) 9 Cal.4th 493, 517 [37 Cal.Rptr.2d 278, 886 P.2d 1271].) This principle, however, " 'is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' . . ." (*People* v. *Cantrell* (1992) 7 Cal.App.4th 523, 552 [9 Cal.Rptr.2d 188], review den., quoting *People* v. *Hunt* (1990) 225 Cal.App.3d 498, 505 [275 Cal.Rptr. 367] review den.) Courts will not construe an ambiguity in favor of the accused if "such a construction is contrary to the public interest, sound sense, and wise policy." (*People* v. *Johnson* (1995) 33 Cal.App.4th 623, 632 [39 Cal.Rptr.2d 463] review den.) Rather, "[t]he major consideration in interpreting a criminal statute is legislative purpose. We read the statute in light of the evils which prompted its enactment and the method of control which the Legislature chose. (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Introduction to Crimes, § 22, p. 28.)" (*People* v. *Vega* (1995) 33 Cal.App.4th 706, 709-710 [39 Cal.Rptr.2d 479].) The rule of construction favorable to the accused "applies only when some doubt exists as to the legislative purpose in enacting the law." (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1046 [36 Cal.Rptr.2d 74, 884 P.2d 1022].)

Here there can be no doubt about the purpose of section 12034: to penalize those who furnish transportation to armed passengers. This purpose would be thwarted under defendant's construction. At the same time, there is nothing unreasonable in declaring that a driver acts at his or her peril by knowingly permitting a passenger to carry a firearm without adequate assurance that the weapon is unloaded. Such a sanction warns the driver to take affirmative action to prevent his or her passengers from bringing loaded weapons into the vehicle. (See *People* v. *Overten* (1994) 28 Cal.App.4th

1497, 1503 [34 Cal.Rptr.2d 232], review den.) The duty thus imposed is little different from that which burdens the immediate possessor of the gun under section 12031(a)(1). It is settled that the latter statute does *not* require proof that the possessor knew the gun was loaded. (*People* v. *Dillard* (1984) 154 Cal.App.3d 261, 263 [201 Cal.Rptr. 136]; see *People* v. *Harrison* (1969) 1 Cal.App.3d 115, 120 [81 Cal.Rptr. 396].) Instead, "the burden of acting at hazard is placed upon a person who, albeit innocent of criminal intent, is in a position to avert the public danger." (*People* v. *Dillard, supra,* 154 Cal.App.3d at p. 266.) In part this is because carrying a loaded weapon is " ' "so destructive of the social order," ' " and " ' "the element of criminal intent would be so extremely difficult if not impossible of proof," ' " that the Legislature "has provided that the doing of the act constitutes a crime, regardless of knowledge or criminal intent on the part of the defendant." (*Ibid.*)

Appellant had ready to hand the means to avoid criminal responsibility. He needed only to assure himself that the shotgun and rifle carried by his passengers were, and remained, unloaded. By failing to do so, he "act[ed] at hazard" that they were loaded. When that proved to be the case, he was guilty of violating section 12034. The only knowledge required was the knowledge that the weapons were present.

The order under review is affirmed.

Smith, Acting P. J., and Haerle, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 1996.