[No. H013331. Sixth Dist. Oct. 11, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
RICHARD CARL WILLIAMS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III. A., III. B., III. D., III. E., III. F., III. H., III. I. and IV.

1634

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Appellant.

Deanna F. Lamb, under appointment by the Court of Appeal, for Defendant and Appellant.

## OPINION

### WUNDERLICH, J.—

### I. *Statement of the Case*

Defendant Richard Carl Williams appeals from a judgment entered after he pleaded guilty to three counts of residential burglary and one count of receiving stolen property and the court found him guilty of a fourth count of residential burglary and also found true prior conviction allegations.

Defendant claims there is insufficient evidence to support his conviction for the burglary count that was tried. He claims the trial court failed to render a verdict on the prior conviction allegations. He claims the court erred in failing to strike an enhancement allegation because it was not a *"prior conviction,"* in considering as a "strike" a prior conviction suffered before Penal Code section 667, subdivisions (b) through (i), the "three strikes" law, (hereafter § 667 (b)-(i)) was enacted, and in not determining whether to strike the prior allegation convictions in furtherance of justice.[1] He also claims the three strikes law is unconstitutionally vague, it was improperly passed as urgency legislation, and its limitation on the amount of conduct credit he can earn while in prison violates his right to equal protection. Last, he claims the limitation on the amount of custody credit he can earn in prison applies only to the term imposed for the burglary committed after the three strikes law became effective.

The People also appeal from the judgment. They claim that the court erred in staying a five-year enhancement for a prior serious felony conviction.

We agree with defendant's claim that the credit limitation does not apply to offenses that predate the three strikes law. We find no merit to his other claims. We also agree with the People's claim and remand the case for a redetermination of the sentence.

### II. *Facts*

Linda Broughton and William Red live in apartment 309 at 501 Camino Aguajito in Monterey. On March 14, 1994, Red left for work at 7:30 a.m. Broughton left at approximately 9 a.m., locking the door on her way out. At around that time Larry Schmidt, who lives above Broughton and Red, saw an African-American woman standing between Broughton's apartment and the next apartment. He asked what she was doing. She said she was waiting for

---

[1]Unless otherwise specified, all further statutory references are to the Penal Code.

someone in apartment No. 311. Schmidt knew apartment 311 was empty and escorted the woman off the property.

That same morning, Nader Agha, who operates The Coin Treasure Shop, was driving on Sloat Street not far from Camino Aguajito. He saw defendant holding hands with an African-American woman. He recognized both because they had been in his store.

At noon, Broughton returned home to find the door ajar and a window broken. Various items of jewelry were missing. She called Red, and he returned also to discover jewelry and money missing. They called the police, who came and checked for fingerprints but found none. Later, Schmidt identified a photo of Loretta Wilson to Officer Steven Brownlee as the person he had seen near Broughton's apartment.

The next day, Brownlee saw defendant and Wilson walking together on Fremont Street in Seaside. Wilson entered the Peninsula Gem and Jewelry store by herself. She later rejoined defendant outside. Brownlee entered the store and spoke with Mike Green, who said the woman had wanted to sell a ring. Green made a sketch, which Broughton later said depicted a ring identical to one that was missing.

On March 16, Detective Steven McMahon saw defendant and Wilson in Seaside. Defendant was wearing a black leather jacket. The pair were headed toward the Driftwood Motel. On March 18, police searched their motel room pursuant to a warrant. In a closet, police found a black leather jacket with a pair of socks in an inner pocket. They did not find any jewelry. Defendant and Wilson were arrested for being under the influence of narcotics.

Later, Wilson led police to an alley behind an address defendant had been known to use and showed them where to find a paper bag, which contained items taken from Broughton's apartment. Wilson also said they would find a piece of broken glass in a planter in the apartment.

At trial, Wilson admitted she and defendant had previously burglarized a different apartment on February 18, 1994. The trial court took judicial notice of its files which revealed that defendant pleaded guilty to the February burglary and that Wilson pleaded guilty to the Broughton burglary.

### III. *Defendant's Appeal*

### A., B.*

. . . . . . . . . . . . . . . . . . . . . . .

### C. *Defendant's plea established his prior conviction.*

On December 6, 1993, defendant committed a burglary, and on March 2, 1994, he pleaded guilty—No. MCR9120. On March 14, he committed the Broughton burglary. On April 19, judgment was pronounced in No. MCR9120. The information in this case charged the prior burglary as a "strike" under section 667 (b)-(i).

Defendant notes that section 667, subdivision (c), makes the harsher three strikes sentencing provisions applicable when (1) a defendant "has been convicted of a felony" and (2) "it has been pled and proved that the defendant has one or more *prior felony convictions* as defined in subdivision (d) . . . ." (Italics added.) He contends the burglary in No. MCR9120 cannot be considered a prior felony conviction. He argues that "prior felony convictions" in section 667, subdivision (c), is ambiguous because it can narrowly mean a verdict or guilty plea or more broadly include both the verdict or plea *and* the judgment pronounced thereon. (See *People* v. *Vessell* (1995) 36 Cal.App.4th 285, 291 [42 Cal.Rptr.2d 241]; *Boyll* v. *State Personnel Board* (1983) 146 Cal.App.3d 1070, 1073-1074 [194 Cal.Rptr. 717].) He claims that under established rules of statutory construction, we must adopt that latter interpretation because it is more favorable to him. (See *People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].) Thus, because judgment in No. MCR9120 was not pronounced until after he committed the Broughton burglary, the court erred in treating the prior offense as a "strike." We disagree.

In *People* v. *Rhoads* (1990) 221 Cal.App.3d 56, 60 [270 Cal.Rptr. 266], the court recognized that "the term 'conviction' has no fixed definition and has been interpreted by the courts of this state to have various meanings, depending upon the context in which the word is used." Generally, however, where the existence of a prior conviction triggers increased punishments, courts interpret "conviction" to mean the factual ascertainment of guilt by verdict or plea.

For example, in *People* v. *Rhoads, supra,* 221 Cal.App.3d 56, the defendant pleaded guilty to possession of drugs, but before being sentenced, he

---

*See footnote, *ante,* page 1632.

committed additional offenses. The information alleged the first offense as a prior conviction. As here, the defendant claimed "conviction" included judgment and sentence. The court disagreed and opined that this interpretation would lead to " 'nonsensical results.' " (*Id.* at p. 59.) "[A] person could commit and plead guilty to any number of violations within the purview of the statute, but so long as sentencing did not occur, the mandatory three-year enhancement would be avoided. The Legislature certainly did not intend to benefit a repeat offender such as defendant based solely on the fortuity of the timing of sentencing." (*Ibid.*) In this regard, the court noted that the purpose of the enhancement "is to deter repetition of the criminal conduct. [Citation.] In this context, i.e., statutes which impose more severe penalties for second and subsequent criminal offenses, 'conviction' means the ascertainment of guilt, whether by plea or verdict." (*Id.* at pp. 60-61; see also *People* v. *Shirley* (1993) 18 Cal.App.4th 40, 46-47 [22 Cal.Rptr.2d 340]; *People* v. *Johnson* (1989) 210 Cal.App.3d 316, 324-325 [258 Cal.Rptr. 347]; *People* v. *Loomis* (1965) 231 Cal.App.2d 594, 595-596 [42 Cal.Rptr. 124].)

We find *Rhoads* persuasive and applicable in the three strikes context. To determine the meaning of "prior convictions" in section 667, subdivision (c), we must "ascertain the intent of the lawmakers so as to effectuate the purpose of the law." (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].)

The purpose of section 667 (b)-(i) is to deter and punish recidivism by making repeat offenders serve longer sentences. (See § 667, subd. (b).) The focus of the three strikes law is *conduct*: did the defendant commit a felony after having previously committed one or more serious or violent felonies? When a defendant pleads guilty to or is convicted of a felony, the law is satisfied factually that he or she committed it. When the deterrent effect of the law fails and the defendant subsequently commits another felony, he or she becomes a repeat offender and deserves harsher punishment, regardless of whether judgment and sentence have been pronounced on the initial offense.

■ Given the focus and purpose of section 667 (b)-(i), we conclude that "prior felony convictions" in section 667, subdivision (c), falls within the general rule illustrated in *Rhoads*: when guilt is established, either by plea or verdict, the defendant stands convicted and thereafter has a prior conviction.

■ We are not bound by the rule requiring courts to adopt the more lenient interpretation of ambiguous penal statutes. In *In re Ramon A.* (1995) 40 Cal.App.4th 935, 941 [47 Cal.Rptr.2d 59], the court explained that this

rule " ' "is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable." . . .' [Citations.] Courts will not construe an ambiguity in favor of the accused if 'such a construction is contrary to the public interest, sound sense, and wise policy.' [Citation.] Rather, '[t]he major consideration in interpreting a criminal statute is legislative purpose. We read the statute in light of the evils which prompted its enactment and the method of control which the Legislature chose. [Citations.] The rule of construction favorable to the accused 'applies only when some doubt exists as to the legislative purpose in enacting the law. [Citation.]' " (See *People* v. *Jimenez* (1992) 11 Cal.App.4th 1611, 1626 [15 Cal.Rptr.2d 268].)

■ Here, we do not face two equally reasonable but conflicting interpretations of "prior convictions." (Cf. *People* v. *Camillo* (1988) 198 Cal.App.3d 981, 991 [244 Cal.Rptr. 286].) Defendant's interpretation is inconsistent with the legislative intent of the three strikes law and would lead to absurd results. For example, it would allow a defendant to avoid harsher punishment, despite admitted or proven recidivist conduct, if his or her escape delays the pronouncement of judgment until after he or she commits additional serious or violent felonies. (Cf. *People* v. *Johnson, supra,* 210 Cal.App.3d 316.)

Defendant's reliance on *People* v. *Superior Court (Perez)* (1995) 38 Cal.App.4th 347 [45 Cal.Rptr.2d 107] is also misplaced. There, the court held that the three strikes law did not eliminate a trial court's discretion to declare a "wobbler" a misdemeanor at sentencing. The court found the legislative intent on this issue unclear and ambiguous, and therefore, the language "should be construed as favorably to the defendant as reasonably possible considering the language and the circumstances." (*Id.* at p. 363.)

We point out that when a prior offense is a "wobbler," a plea or verdict does not establish whether it is a felony; rather the sentence does.[2] Thus, when the prior offense is a "wobbler," the phrase "prior convictions" must include the pronouncement of sentence because only then can it be determined whether three strikes applies. (See *People* v. *Trausch* (1995) 36 Cal.App.4th 1239, 1245-1247 [42 Cal.Rptr.2d 836]; *People* v. *Vessell, supra,* 36 Cal.App.4th at pp. 291-294.) However, when a prior offense is by definition a serious or violent felony, "prior convictions" may not reasonably be construed to include the pronouncement of judgment.

---

[2]"[A] wobbler is a special class of crime which could be classified and punished as a felony or misdemeanor depending upon the severity of the facts surrounding its commission." (*People* v. *Superior Court (Perez), supra,* 38 Cal.App.4th at p. 360, fn. 17.)

D.-F.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

G. *The conduct credit limitation in section 667, subdivision (c)(5), does not apply to terms imposed for offenses committed before three strikes legislation became effective.*

Section 667, subdivision (c)(5), provides, "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions as defined in subdivision (d), the court shall adhere to each of the following: . . . [¶] (5) The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 shall not exceed one-fifth of the *total term of imprisonment imposed* and shall not accrue until the defendant is physically placed in the state prison." (Italics added.)

 Defendant contends that the one-fifth (20 percent) limitation on credits he may earn applies only to that portion of his sentence which was doubled under section 667, subdivision (e), namely, the doubled six-year term for the Broughton burglary, which he committed after the three strikes law became effective. Conversely, he claims the limitation does not apply to the terms for enhancements or offenses that predate three strikes. We both agree and disagree.

### 1. Enhancements

Defendant's claim as it relates to enhancements was rejected in *People* v. *Brady* (1995) 34 Cal.App.4th 65 [40 Cal.Rptr.2d 207]. There, before the three strikes law became effective, the defendant served a prison term for a serious felony conviction. After three strikes, he committed and was convicted of another felony. At sentencing the court doubled the two-year midterm for the offense and then added a one-year prior prison term enhancement, for a total term of five years. On appeal, the defendant claimed the custody credit limitation did not apply to the one-year enhancement, and if it did, then it violated the prohibition against ex post facto laws.

Resolution of this claim rested primarily on the meaning and legislative intent of "total term of imprisonment" in section 667, subdivision (c)(5). In concluding the limitation applied to enhancements, the *Brady* court opined that the language of subdivision (c)(5) was clearly intended to apply to recidivists like the defendant. (*People* v. *Brady, supra*, 34 Cal.App.4th at p.

---

*See footnote, *ante*, page 1632.

70.) It noted that under the determinate sentencing law (DSL), enhancement terms are part of the "aggregate," i.e., *total* term of imprisonment, and stated that the three strikes law "[did] not change these primary sentencing rules" and must be understood in conjunction with them. (*Ibid.*; see *People* v. *Tassell* (1984) 36 Cal.3d 77, 90 [201 Cal.Rptr. 567, 679 P.2d 1], overruled on other grounds in *People* v. *Ewoldt* (1994) 7 Cal.4th 380, 401 [27 Cal.Rptr.2d 646, 867 P.2d 757].)[6] The court further pointed out that applying the credit limitation to enhancements promoted the purpose of three strikes, which is to ensure longer sentences and greater punishment. (*People* v. *Brady*, *supra*, 34 Cal.App.4th at p. 71; see § 667, subd. (b).) Finally, the court found that together, the dictionary definition of "total," the common-sense meaning of "total term," and the use of that phrase in abstract of judgment forms revealed a legislative intent to include enhancements in the meaning of " 'total term of imprisonment imposed.' " (34 Cal.App.4th at p. 71.)

▪ *Brady* also rejected the defendant's "ex post facto" claim. The court implicitly likened the credit limitation to laws that provide harsher penalties for offenses committed by repeat offenders. (See, e.g., *In re Ramirez* (1985) 39 Cal.3d 931, 934-937 [218 Cal.Rptr. 324, 705 P.2d 897]; cf. also *Helmer* v. *Miller* (1993) 19 Cal.App.4th 1565, 1571 [25 Cal.Rptr.2d 8]; *People* v. *Mills* (1992) 6 Cal.App.4th 1278, 1281-1282 [8 Cal.Rptr.2d 310]; compare with *Weaver* v. *Graham* (1981) 450 U.S. 24 [67 L.Ed.2d 17, 101 S.Ct. 960].) Such laws do not violate ex post facto principles because the harsher punishment is an incident of the subsequent conduct rather than additional punishment for prior convictions. (*People* v. *Brady*, *supra*, 34 Cal.App.4th at pp. 71-72.)

We find *Brady* persuasive and agree that as to enhancements, the phrase "total term of imprisonment" is clear and unambiguous. Defendant concedes that *Brady* is fatal to his claim.

### 2. *Offenses that predate three strikes*

▪ Given the circumstances before it, the *Brady* court did not consider whether "total term of imprisonment" included terms for offenses that

---

[6]Section 1170.1, subdivision (a), provides that the "aggregate term of imprisonment for all these [two or more] convictions shall be the sum of the principal term, the subordinate term and any additional term imposed . . . [for specified enhancements]."

In *People* v. *Tassell*, *supra*, 36 Cal.3d at page 90, the court explained that under section 1170.1, subdivision (a), when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, ". . . *the total sentence* consists of (1) the principal term, (2) the subordinate term, and (3) any enhancements for prior convictions." (36 Cal.3d at p. 90, italics added.)

predate three strikes and that are imposed along with terms for post three-strikes offenses.

In his opening brief, defendant urges us not to extend the analysis of *Brady* to cover such terms. In its respondent's brief, the People argue that the reasoning in *Brady* compels the conclusion that the limitation applies. However, in supplemental briefing, the People persuade us, perhaps unintentionally, that the limitation does not apply.

The People observe that the primary issue is legislative intent. They point out that "the Department of Corrections (DOC) is *not* applying the credit limitation to current substantive offenses committed before the Three Strikes Law."[7] (Italics in original.) With commendable candor, the People now question whether the Legislature intended for the credit limitation to apply to preenactment offenses.

The People correctly note that the DOC's application of statutory language, although not controlling, is "entitled to respect by the courts and is a significant factor to be considered in ascertaining the meaning of a statute . . . . [Citations]." They also point out that the DOC's view was consistent with a legislative analyst's ballot pamphlet explanation of language in the three strikes initiative identical to that in section 667, subdivision (c)(5). The analysis states that both provisions " 'require that a person who has been convicted previously of one or more serious or violent felonies may not earn credits to reduce the time he or she spends in prison for the *new offense*, by more than one-fifth . . . .' " (Italics in original.)

The People also convincingly explain why *Brady*'s analysis concerning enhancements is not controlling. They note that an enhancement has no independent basis. It is not a "discrete offense" subject to the sentencing provisions of three strikes; rather enhancements are "totally dependent on conviction for the underlying [post three strikes] substantive charge." "By contrast, substantive offenses are discrete, independent charges, and conviction of any one is not formally contingent on conviction on any other. Although consecutive sentences might *literally* make each substantive offense part of the total term of imprisonment imposed for any one, the statutorily required connection, which exists between an enhancement and substantive offense, is absent. Where all the substantive offenses are post-enactment, the credit limitation necessarily applies. But [the "joinder" of

---

[7]They submit Department of Corrections (DOC) instructional memoranda, of which we take judicial notice (Evid. Code, § 452, subd. (b)), which indicate that where, as here, pre-three strikes offenses are sentenced consecutively to post three-strikes offenses, the DOC applies the credit limitation only to the later offenses. The more generous credit allowance in section 2933 remains applicable to the former offenses.

pre- and postenactment substantive offense] is a fortuity on which an intent to impose the credit limitation on the former is not clear. The purpose of the Three Strikes Law could, as DOC sees it, have been to increase penalties on new offenses only. Given the absence of a clear statement in the statute showing an intent to apply it to pre-enactment substantive offenses, DOC's administrative interpretation, and potential impediments to application of the statute to pre-enactment substantive offenses,[8] one could reasonably conclude the credit limitation does not apply to pre-enactment substantive offenses."

We agree with the People that the language of section 667, subdivision (c)(5) is ambiguous, that is, susceptible of two reasonable but opposing interpretations, concerning whether the credit limitation applies to terms for preenactment offenses.

As noted above, under such circumstances, we choose the interpretation most favorable to the defendant unless it would lead to absurd results or defeat the purpose of the statute. (*People* v. *Simon* (1995) 9 Cal.4th 493, 517-518 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *In re Ramon A. supra*, 40 Cal.App.4th at p. 941; see, e.g., *People* v. *Superior Court* (*Perez*), *supra*, 38 Cal.App.4th 347 [applying rule to three strikes provision]; *People* v. *Hill* (1995) 37 Cal.App.4th 220, 226 [44 Cal.Rptr.2d 11] [same].) The rule is based on judicial recognition that "[t]he defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute. [Citations.]" (*People* v. *Overstreet, supra*, 42 Cal.3d at p. 896.)

Under the DOC's interpretation of section 667, subdivision (c)(5), a prisoner will necessarily spend more time in prison for the offense that triggered the three strikes law than he or she would if three strikes were inapplicable. Thus, the DOC's interpretation is fully consistent with and promotes the purpose of three strikes. We recognize that under the DOC's interpretation, a prisoner will spend less time than under an interpretation of "total term of imprisonment" that *includes* terms for preenactment offenses. However, we do not find that such a result is absurd or that it defeat the purpose of the three strikes law.

Under the circumstances, we conclude that the credit limitation in section 667, subdivision (c)(5), does not apply to terms imposed for offenses committed before enactment of the three strikes law.[9]

[8]The People do not explain what they meant by "potential impediments."

[9]Although the People's analysis leads directly to the conclusion we reach, they urge us not to address defendant's claim. Given the DOC practice, they argue that the issue is both

H., I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV. *The People's Appeal*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

V. *Disposition*

The judgment of conviction is affirmed. However, the matter is remanded for the court to reconfigure defendant's sentence in accordance with this opinion and the plea agreement.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied November 7, 1996, and the petition of appellant Richard Carl Williams for review by the Supreme Court was denied January 28, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

premature and moot. However, we agree with the court in *Brady*, which addressed the defendant's claim, regardless of prematurity, finding the legal issue raised to be "of state-wide importance to the bench and bar, particularly for defense counsel in advising defendants about the consequences of the new 'three strikes' law . . . ." (*People* v. *Brady, supra,* 34 Cal.App.4th at p. 68, fn. 6.)

 *See footnote, *ante,* page 1632.