115 Cal.Rptr.2d 144 (2002)
94 Cal.App.4th 1443
The PEOPLE, Plaintiff and Respondent,
v.
Jeffrey G. HAMMER, Defendant and Appellant.
No. D037349.
Court of Appeal, Fourth District, Division One.
January 9, 2002.
Review Granted April 17, 2002.
*145 Christopher Blake, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Elizabeth S. Voorhies, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[1]
HUFFMAN, Acting P.J.
In determining whether persons who commit lewd acts upon children may be considered for probation, the legislature has enacted specific measures providing that family members who molest children may, in narrowly defined circumstances, be granted probation in an attempt at rehabilitation. Does this specialized consideration for family relationships extend also to those cases where rehabilitation has failed; that is, does this special exemption for sentencing purposes extend to those who reoffend by committing new sexual *146 offenses against children, and thus would be otherwise subject to enhanced punishment by reason of their prior sexual offenses against children?
That is the principal, but not the only, question of first impression before us. For reasons which shall appear, we hold the legislative determination special consideration may be given family members who commit sexual offenses against children does not extend to those cases, such as this, where rehabilitation has failed, and a family member continues to sexually reoffend against his children.
Jeffrey G. Hammer was convicted by a jury of one count of forcible lewd acts upon a child in violation of Penal Code[2] section 288, subdivision (b)(1), two counts of lewd acts upon a child in violation of section 288, subdivision (a), and one count of assault, in violation of section 242. He was sentenced under section 667.61 (the "One Strike" law).[3] Hammer appeals, arguing (1) hearsay evidence was improperly admitted; (2) it was error to sentence him under the One Strike law; and (3) his custody credits were not properly calculated. The People argue that Hammer should have been sentenced not only under the One Strike law but also pursuant to section 667, subdivisions (b) through (i), the "Three Strikes" law,[4] and the failure of the trial court to so sentence Hammer means that the sentence imposed herein was unauthorized.
We disagree with Hammer's assertions of error, and affirm the judgment against those challenges, but remand the matter for a determination at a resentencing whether the court should exercise its discretion to impose or dismiss the "strike" priors, as we find the People's assertion of sentencing error well taken.

FACTUAL BACKGROUND

1985-1991: Marriage, Molestation of M., Probation and Divorce
Hammer married J. in 1985. J. at that time had a four-year-old daughter, M. Hammer later adopted M. In 1988, when Hammer and J. lived in Oceanside, and M. was six or seven years old, J. was pregnant with Hammer's child. Shortly before the birth of their daughter K., in 1988, J. learned that Hammer had on several occasions forced M. to orally copulate him. Hammer was convicted of these molestations, and was granted probation, which he completed. As a result of his having molested JVL, however, Hammer left the home, and Hammer and J. were divorced in 1991.

1997-1998: Reunification and Molestation of K.
Hammer and J. remained in contact, and in 1997 Hammer moved back into the home, at a time when K. was nine years old. At some time in 1998, Hammer's son by an earlier relationship moved into the home with Hammer, J., M. and K. One day in August of 1998, after K. had been to the beach with M. and gotten sunburned, she was at home alone with her father.
Hammer told K. that some lotion would be good for the sunburn, and told her to sit on his lap. Hammer removed K.'s shirt and bra, and began rubbing lotion on her back. Hammer then rubbed lotion on K.'s stomach and breasts, and twisted K.'s nippies.[5] *147 After touching her breasts, Hammer told K. not to tell anyone, as he might be sent to prison for 25 years or more if anyone found out.[6] K. picked up her clothing, ran to her room, and locked the door.
Hammer later told J. that he had touched K.'s breasts while rubbing lotion on her sunburn, but claimed it had been an accident. (K. also told her mother that Hammer had touched her breasts, but did not tell her mother Hammer had removed her T-shirt and her bra.)

1999: Remolestation of and Forcible Lewd Acts upon K.
On December 14, 1999, K., who had an infestation of head lice, stayed home from school. J. was not home, but Hammer was. In the kitchen, Hammer began to shampoo K.'s hair with medicated shampoo. Hammer then told K. to go into the shower in the master bedroom. K. asked if she could shower in her own bathroom, but Hammer insisted she use the shower in his bathroom.
After disrobing at Hammer's direction, K. showered while Hammer watched. Hammer then allowed K. to use one towel to cover her hair, while he used a second towel to dry off his daughter's body. K. asked if she could use the towel herself, but Hammer told her: "No. I have never gotten to dry my own daughter off." Hammer then exposed his penis, and told K. to open her mouth. Hammer then pushed K.'s head towards his penis, and although K. resisted, her bottom lip touched his penis. Hammer then relented, and told K. not to tell anyone.[7]
K. wrote a letter to her mother and gave it to her mother that day. In the letter, K. (then 11 years old) wrote:
"We were washing my hair and then he made me take a shower in his room. I said can I just take it my bathroom and he said no and then after I was done he was being nasty again and then he was telling me to open my mouth for the nasty thing but then I told him that he said you would not make me do anything I did not want to do and he said `I'm sorry, I do remembering saying that and I'm sorry.[`]
"I told him no and I just put my face in the towle [sic] and then he left and after I was out and he went to bed.
"Can we put him in death or Hell!"[8]

*148 PROCEDURAL BACKGROUND
By amended information filed September 25, 2000, the District Attorney of San Diego County charged Hammer in count 1 with forcible lewd acts upon a child (§ 288, subd. (b)(1)), and in counts 2 through 4 with lewd acts upon a child (§ 288, subd. (a)).[9] It was also alleged that Hammer's 1988 conviction for lewd acts upon a child was a prior serious felony conviction within the meaning of section 667, subdivision (a) and a qualifying prior conviction under the One Strike law (§ 667.61) and the Habitual Sexual Offender law (§ 667.71).
Jury trial began October 2, 2000. On October 4, 2000, Hammer admitted his 1988 conviction for lewd acts upon M. was a prior serious felony conviction, and was also a qualifying prior conviction within the meaning of the One Strike and Habitual Sexual Offender laws. On October 6, 2000, the jury found Hammer guilty as charged in counts 1, 2 and 4, and guilty of the lesser included offense of assault as to count 3.
Hammer's counsel thereafter filed a motion for new trial, arguing the evidence was insufficient, it was error to receive evidence of the 1988 molestations of M., and the evidence of the two notes K. wrote was erroneously admitted. The motion for new trial was denied on the day of sentencing, December 19, 2000. In another memorandum, Hammer's counsel requested dismissal of the prior conviction because, since he had received probation after pleading guilty in 1988 to committing lewd acts upon M. in violation of section 288, subdivision (a), this conviction did not qualify as a prior conviction for purposes of imposing sentence under the One Strike law.[10] This request was also denied at sentencing.
The trial court then sentenced Hammer pursuant to section 667.61 to consecutive terms of 25 years to life for his convictions on counts 1 and 4,[11] with a five-year enhancement for the prior serious felony conviction, for a total term of 55 years to life in state prison. Sentences on counts 2 and 3 were stayed pursuant to section 654.

STANDARD OF REVIEW
"The meaning of [a] phrase ... in Penal Code section 667.61 ... is a pure question of law. We address it, therefore, under an independent review standard." People v. Jones (2001) 25 Cal.4th 98, 103, 104 Cal.Rptr.2d 753, 18 P.3d 674.) The same independent review standard, of course, applies to our determination of the meaning to be accorded Evidence Code section 1360.

DISCUSSION

I

ADMISSION OF K'S NOTES TO HER MOTHER
Hammer first argues admission of the notes K. wrote was improper, as such writings were not within the ambit of admissible evidence as set out in Evidence Code section 1360. Section 1360, which applies only in criminal proceedings, provides in pertinent part:

*149 "(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply:
"(1) The statement is not otherwise admissible by statute or court rule.
"(2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability.
"(3) The child either:
"(A) Testifies at the proceedings.
"(B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child.
"(b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement."
Hammer argues that "statement" should not be construed to include a writing, as opposed to an oral, narrative. While no case has yet determined this precise issue,[12] its resolution is clear. Hammer argues the statements do not qualify for admission under various sections of the Evidence Code, such as the exception for past recollection recorded provided for by Evidence Code section 1237, but as will appear, these arguments miss the point.
As Evidence Code section 225 provides, a "statement" is an "oral or written expression," (italics added), and Evidence Code section 1360, the statute in question, provides an exception for admission of "a statement made by the victim when under the age of 12 describing any act of child abuse," and K.'s writings clearly constitute a "statement" within the meaning of the Evidence Code. Thus, there was no error in admitting K.'s writings as "statements" pursuant to Evidence Code section 1360.

II

VALIDITY OF 1988 CONVICTION AS QUALIFYING ONE STRIKE PRIOR
Hammer next argues that because he was granted probation for his 1988 section 288, subdivision (a) conviction, pursuant to section 1203.066, subdivision (c)[13] and because he successfully completed that *150 probation, he should not have been sentenced under section 667.61, the One Strike law. We do not agree.
The governing rules for determination of the meaning of a statute are clear:
"[T]he fundamental goal of statutory interpretation is to ascertain and carry out the intent of the Legislature. [Citations.] To the extent that uncertainty remains in interpreting statutory language, `consideration should be given to the consequences that will flow from a particular interpretation' [citation], and both legislative history and the `wider historical circumstances' of the enactment may be considered. [Citation.] Further, ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent. [Citation.]" (People v. Cruz (1996) 13 Cal.4th 764, 782-783, 55 Cal.Rptr.2d 117, 919 P.2d 731. See also People v. Chambless (1999) 74 Cal.App.4th 773, 783-784, 88 Cal.Rptr.2d 444.)
This court has previously rejected a contention that a felony conviction, for which the defendant was granted and successfully completed probation, did not constitute a prior conviction for purposes of the Three Strikes law: "The ordinary legal meaning of `conviction' is a verdict of guilty or the confession of the defendant in open court, and not the sentence or judgment. [Citations.] Indeed, it is settled that for purposes of a prior conviction statute, a conviction occurs at the time of entry of the guilty plea. [Citations.]" (People v. Castello (1998) 65 Cal.App.4th 1242, 1253, 77 Cal.Rptr .2d 314.)[14] Hammer advances no reason why our analysis ought to lead to a different result under the One Strike law.
The underlying purpose of the One Strike law is clear: to punish severely those persons who commit enumerated serious sexual offenses, and to punish yet *151 more severely those persons who are recidivist serious sexual offenders. The interpretation now urged by Hammer would result in a wholly fortuitous secondary benefit to an interfamilial sex offender who, as it eventuates, has not been rehabilitated by the initial grant of clemency he received. This result is, we believe, "inconsistent with apparent legislative intent."[15]
We thus conclude Hammer's 1988 conviction was a proper basis for sentencing him under the One Strike law as having suffered a qualifying prior felony conviction; the fact of his having subsequently to that prior conviction received a grant of probation is without relevance on the question whether he in fact had incurred such a prior conviction.

III-IV[*]

DISPOSITION
The matter is remanded for a new sentencing hearing, at which the sentencing court shall exercise its informed discretion as to whether to dismiss the prior conviction for Three Strikes sentencing purposes, or utilize that conviction. In all other respects, the judgment is affirmed.
WE CONCUR: NARES, J., and HALLER, J.
NOTES
[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III and IV.
[2] Subsequent unattributed citations are to the Penal Code.
[3] This terminology was employed by our Supreme Court in People v. Rayford (1994) 9 Cal.4th 1, 8, 36 Cal.Rptr.2d 317, 884 P.2d 1369, and in subsequent opinions also.
[4] See, e.g., People v. Benson (1998) 18 Cal.4th 24, 34, 74 Cal.Rptr.2d 294, 954 P.2d 557.
[5] This incident resulted in the count 3 verdict of assault and the count 4 verdict of lewd acts upon a child.
[6] By this statement, Hammer may have demonstrated he was aware of the provisions of either the Habitual Sexual Offender law (§ 667.71), the One Strike law (§ 667.61), or both, as the Three Strikes law alone would not result in such a sentence in this case, as Hammer had only one qualifying strike prior conviction.
[7] This incident resulted in the count 1 verdict of forcible lewd acts upon a child and the count 2 verdict of lewd acts upon a child.
[8] Between the time of the lewd acts during the lotion incident and the forcible lewd acts in the shower incident, K. testified, Hammer exposed himself to his daughter several times, and on one of these occasions told her it was okay for her to touch his penis. K. refused, and wrote another note which she gave to her mother, which stated: "Dad said that I was looking at that thing but I said no. I did not and he said it's ok but whatever we do it does not go any where else. And then he said that's ok if you want to tuch [sic] it but I said no I do not want to. He said if you want to wake me up to tuch [sic] it then do so and wake me up [¶] OK. K. NO THANKS!!"
[9] Hammer was also charged with three counts of child molestation (§ 647.6, subd. (a)) and three counts of indecent exposure (§ 314, subd. 1), but the jury found him not guilty of these charges.
[10] Because Hammer's counsel set out this argument in the trial court, we deem the point sufficiently preserved for our present review, rather than waived by the admission.
[11] Section 667.61, subdivision (g), provides for one life sentence per victim per occasion. (See, e.g., People v. Murphy (1998) 65 Cal. App.4th 35, 40, 76 Cal.Rptr.2d 130.)
[12] Other courts have rejected challenges to the statute based on a claimed violation of the right of confrontation (People v. Eccleston (2001) 89 Cal.App.4th 436, 448, 107 Cal. Rptr.2d 440) and on due process grounds (People v. Brodit (1998) 61 Cal.App.4th 1312, 1326, 72 Cal.Rptr.2d 154).
[13] As our Supreme Court pointed out in People v. Jeffers (1987) 43 Cal.3d 984, 239 Cal. Rptr. 886, 741 P.2d 1127, discussing the meaning of this section, "[t]he provisions of section 1203.066 should be construed in light of the major areas of concern expressed at the legislative hearings, one of which was that a child victim often suffers guilt feelings if a nonviolent molester who has been a father figure for that child is imprisoned. According to witnesses expressing this concern, the child feels responsible, albeit irrationally, for betraying a relationship of trust. The likelihood of this occurring would seem to depend directly on the strength of the relationship between the victim and the defendant at the time of the offense and at the time of the `betrayal' (i.e., when the victim first reported the offense).... [¶] Concern was also expressed at the hearings that a distinction be drawn, for purposes of probation eligibility, between those described as intrafamily or `regressed' offenders, who stand some chance of rehabilitation, and the pedophiles or `fixated' offenders, who were considered not amenable to treatment and a greater threat to the community. An intrafamily offender being, by definition, one who committed the offense while within the family or household unit, the defendant's relationship with the victim at the time of the offense is more relevant for the purpose of identifying intrafamily offenders than the relationship at the time of sentencing." (Id. at p. 997, 239 Cal.Rptr. 886, 741 P.2d 1127.)
[14] As we also observed in Castello, "As stated in People v. Williams (1996) 49 Cal.App.4th 1632, 1637, 57 Cal.Rptr.2d 448: It'"[P]rior felony convictions" in [Penal Code] section 667, subdivision (c), is ambiguous because it can narrowly mean a verdict or guilty plea or more broadly include both the verdict or plea and the judgment pronounced thereon. [Citations.] [Defendant] claims that under established rules of statutory construction, we must adopt that latter interpretation because it is more favorable to him. . . . We disagree. [¶] `In People v. Rhoads (1990) 221 Cal.App.3d 56, 60, 270 Cal.Rptr. 266 . . ., the court recognized that "the term `conviction' has no fixed definition and has been interpreted by the courts of this state to have various meanings, depending upon the context in which the word is used." Generally, however, where the existence of a prior conviction triggers increased punishments, courts interpret "conviction" to mean the factual ascertainment of guilt by verdict or plea.' ... In fact, People v. Rosbury (1997) 15 Cal.4th 206, 210, 61 Cal. Rptr.2d 635, 932 P.2d 207, adopted the definition articulated in People v. Williams, supra, 49 Cal.App.4th at page 1638, 57 Cal.Rptr.2d 448, `when guilt is established, either by plea or verdict, the defendant stands convicted and thereafter has a prior conviction.' [K] Certainly, this is consistent with the focus of the recidivist sentencing statutes, that the defendant has not in the past obeyed the law. As such, the popular meaning controls here, unless the nature of the subject or the context suggests a strict technical legal application." (People v. Castello, supra, 65 Cal.App.4th at p. 1253, 77 Cal.Rptr.2d 314.)
[15] In State v. Green (1993) 174 Ariz. 586, 852 P.2d 401 (Green ), the question presented was "[w]hether a defendant who is on probation pursuant to A.R.S. § 13-3601(H) [a statute similar to California Penal Code section 1203.066, subdivision (c)] is subject to enhanced punishment .. . when he commits new offenses during his probationary term." (Green, supra, 852 P.2d at p. 402.) Observing (as we did in Castello) that the term "conviction" was undefined and "susceptible of more than one meaning" (ibid.), the Arizona Supreme Court held in the case before it, "when the defendant . . . pled guilty .. . and received probation under A.R.S. § 13-3601(H), he demonstrated that he posed a danger to society. ... [¶] ... Treating the guilty plea as anything other than a conviction simply gives the domestic violence offender a sentencing windfall ..." (Id. at p. 403.)

Finally, while in Green the question arose while the defendant was still on probation, nothing in that opinion suggests a different result would obtain for a recidivist who had completed his probation, such as Hammer. This conclusion seems particularly compelled, in fact, by the language of the Arizona statute itself, which provides that "[t]his subsection does not apply in any case in which . . . charges under this section have previously been dismissed in accordance with this subsection." (Ariz.Rev.Stat.13-3601(M).) Because, as the Arizona Supreme Court noted, the statute was intended only to "provide a break to some persons guilty of domestic violence" (Green, supra, 852 P.2d at p. 403) providing, as Hammer seeks herein, "additional leniency at sentencing" upon recidivism "could not conceivably have [been] intended" by our Legislature. (Ibid.) We see no reason for California to provide Hammer a "break" by an interpretation of the statutes in question which would involve "a bizarre result." (Ibid.)
[*] See footnote 1, ante.