[No. E028089. Fourth Dist., Div. Two. Oct. 30, 2001.]

BRENT HOWARD WOOTEN et al., Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Roger Jon Diamond for Petitioners.

No appearance for Respondent.

Dennis L. Stout, District Attorney, Grover D. Merritt, Lead Deputy District Attorney, and Mary L. Andonov, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**WARD, J.**—In the trial court, petitioners Brent Howard Wooten and Daniel Robert Mendoza (defendants) stand charged with pimping and pandering. According to the evidence at their preliminary hearing, they worked as managers at the Flesh Club. The Flesh Club appears to have been mainly a standard "strip joint." However, it also offered semiprivate rooms in which, for $240, plus an optional gratuity, a customer could watch two naked women perform sexual acts on each other for approximately nine minutes.

Defendants seek review of the trial court's refusal to set aside the information. They contend there was insufficient evidence of "prostitution," and hence insufficient evidence of either pimping or pandering, because (1) the women sexually touched only each other and not the customer, and (2) the only customer shown by the evidence was an undercover police officer, who, defendants argue, lacked the necessary intent to obtain sexual arousal or gratification.

We agree with defendants as to the first point. We will hold that the definition of "prostitution" requires physical contact between the prostitute and the customer. Because there was no physical contact between the women and the customers, there can be no underlying crime of prostitution. Without prostitution, there is insufficient evidence of either pimping or pandering. Hence, defendants' motion to set aside the information should have been granted. Because we reverse the trial court's denial of defendants' motion on this ground, we need not address the merits of defendants' other contentions.

## I. Factual Background

The following facts were shown at the preliminary hearing.

The main room of the Flesh Club consisted of a stage on which nude dancers performed. It was surrounded by chairs and couches; the couches were used for lap dances. A separate room, called the V.I.P. Room, included five to 10 booths. Each booth was about five feet square and furnished with two small couches and a lamp on a table. The entrance to each booth was partially covered by a sheer curtain. On May 4, 9, 16, 22, and 26, 2000, Officer Mark Aranda and Officer Jerry Valdivia visited the Flesh Club, posing as customers. Officer Valdivia was in a wheelchair, pretending to be disabled, to facilitate his operation of a hidden video camera.

During each visit, the officers went into one of the booths with two female dancers. For about nine minutes, the dancers performed sexual acts on each other.

On May 4, 2000, Officer Valdivia paid each of the dancers $100, plus a $10 tip. On May 9, 2000, he was told that the price had gone up to $120, of which the "house" would receive $45. Thus, on all other dates, he paid each dancer $120, sometimes adding a $5 to $10 tip.

On May 4, 2000, the dancers involved were "Angel" and "Cat."[1] Defendant Mendoza was a manager employed by the Flesh Club. From time to time, he looked into the booth and wrote something on a clipboard.

On May 22, 2000, the dancers involved were "Veronica" and "Anaya," and Veronica and "Malibu." Defendant Wooten was another manager employed by the Flesh Club. From time to time, Wooten came around with a clipboard and checked on the dancers.

On May 26, 2000, the police executed a search warrant at the Flesh Club. Anaya and "Exotica" told police the charge for a V.I.P. Room show was $120 per dancer. Exotica said $75 of this went to the dancer and $45 went to the management at the end of the night. She said the managers kept track of how much the "house" should receive by walking around and taking notes on what each dancer was doing.

---

[1] Cat has also been spelled as "Kat." For consistency, we will refer to her as Cat.

## II. Procedural Background

A felony complaint was filed charging Mendoza with four counts, all allegedly committed on May 4, 2000: pimping[2] and pandering[3] with respect to Angel, and pimping and pandering with respect to Cat. The same complaint also charged Wooten with six counts, all allegedly committed on May 22, 2000: pimping and pandering with respect to Veronica, Anaya and Malibu. After a preliminary hearing, defendants were held to answer.

An information containing the same charges was filed. Defendants filed a motion to set aside the information.[4] They argued that there was no underlying prostitution because "the customer d[id] not receive sex for his money." (Capitalization omitted.) They also argued there was no prostitution because the particular customers involved, the police officers, did not pay the dancers with the intent that they and/or the dancers be sexually aroused or gratified. The trial court denied the motion.

Thereafter, defendants filed a petition for writ of prohibition in this court.[5] Originally, we denied the petition summarily. The Supreme Court, however, granted defendants' petition for review and transferred the case back to us with directions to issue an order to show cause. We hereby comply.

## III. Analysis

### A. The Trial Court Erred in Denying Defendants' Motion to Set Aside the Information

Defendants contend that the trial court erred in denying defendants' motion to set aside the information because the conduct complained of fails to meet the definition of prostitution under section 647, subdivision (b). Hence, without prostitution, there can be no pimping or pandering. The People disagree and argue that the scope of the statute includes the sexual conduct that occurred at the Flesh Club.

---

[2] Penal Code section 266h, subdivision (a). All statutory references will be to the Penal Code unless otherwise indicated.

[3] Section 266i, subdivision (a)(4).

[4] Section 995, subdivision (a)(2).

[5] Section 999a.

### 1. *Standard of Review*

The trial court must grant a motion to set aside the information if "the defendant ha[s] been committed without reasonable or probable cause."[6] The denial of such a motion is reviewable by way of a petition for writ of prohibition.[7]

There is no factual dispute in this case. The only issue to be resolved is whether the alleged conduct constitutes "prostitution" under section 647, subdivision (b), in order to determine whether defendants have been "committed without reasonable or probable cause" for the crimes of pimping and pandering. ■ "The proper interpretation of statutory language is a question of law which this court reviews de novo, independent of the trial court's ruling or reasoning. [Citations.]"[8]

Accordingly, we apply the de novo standard in determining whether the sexual conduct alleged herein constitutes prostitution under section 647, subdivision (b). If the conduct constitutes prostitution, the trial court properly denied the motion. If, however, the conduct fails to constitute prostitution, as a matter of law, then the trial court should have granted the motion to set aside the information because, without the underlying offense of prostitution, there would be no reasonable or probable cause to commit defendants for the crimes of pimping and pandering.

### 2. *Legal Background*

#### a. *Definitions of Pimping, Pandering, Prostitution and Lewd Act*

Pimping is committed by "any person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, or from money loaned or advanced to or charged against that person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or who solicits or receives compensation for soliciting for the person . . . ."[9]

Pandering, as relevant here, is committed by "any person who . . . :

"(1) Procures another person for the purpose of prostitution. [¶] . . . [¶]

---

[6]Section 995, subdivision (a)(2)(B).

[7]Section 999a.

[8]*Plunkett v. Spaulding* (1997) 52 Cal.App.4th 114, 126 [60 Cal.Rptr.2d 377], overruled on other grounds in *Schreiber v. Estate of Kiser* (1999) 22 Cal.4th 31, 40 [91 Cal.Rptr.2d 293, 989 P.2d 720].

[9]Section 266h, subdivision (a).

"(4) By promises, threats, violence or by any device or scheme, causes, induces, persuades or encourages an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate."[10]

In *People v. Freeman*, the Supreme Court stated that the definition of prostitution is derived from section 647, subdivision (b) because the pandering statute does not define prostitution.[11] Section 647, subdivision (b) states that " 'prostitution' includes any lewd act between persons for money or other consideration." Hence, the definition of prostitution, and ultimately, the definition of pimping or pandering, depends on what sexual conduct is considered to be a "lewd act."

"Lewd conduct" has been defined by *Pryor v. Municipal Court*,[12] and *People v. Hill*.[13] In *Freeman*, the Supreme Court noted that in *Pryor*, it defined "lewd conduct" as " 'touching of the genitals, buttocks, or female breast, for the purpose of sexual arousal, gratification, annoyance or offense . . . .' [Citation.]" for purposes of section 647, subdivision (a).[14, 15] The Supreme Court also noted that in *Hill*, a lower court had followed *Pryor* by defining "lewd act," for purposes of section 647, subdivision (b), so as to require that " 'the genitals, buttocks, or female breast, of either the prostitute or the customer must come in contact with some part of the body of the other for the purpose of sexual arousal or gratification of the customer or of the prostitute.' "[16]

### b. *The Rule of Lenity*

The People argue that the sexual conduct that occurred at the Flesh Club constitutes prostitution, as defined under section 647, subdivision (b), because the statute does not state that there must be touching between the customer and the prostitute. Section 647, subdivision (b) simply states that prostitution "includes any lewd act between persons for money or other

---

[10]Section 266i, subdivision (a)(1), (4).

[11]*People v. Freeman* (1988) 46 Cal.3d 419, 424 [250 Cal.Rptr. 598, 758 P.2d 1128] (*Freeman*), certiorari denied *sub nom. Applegate v. California* (1989) 489 U.S. 1017 [109 S.Ct. 1133, 103 L.Ed.2d 194].

[12]*Pryor v. Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636] (*Pryor*).

[13]*People v. Hill* (1980) 103 Cal.App.3d 525 [163 Cal.Rptr. 99] (*Hill*).

[14]*Freeman, supra*, 46 Cal.3d 419, 424, italics omitted, quoting *Pryor, supra*, 25 Cal.3d 238, 256.

[15]Section 647, subdivision (a) makes any person "[w]ho solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view" guilty of disorderly conduct, a misdemeanor.

[16]*Freeman, supra*, 46 Cal.3d 419, 424, italics omitted, quoting *Hill, supra*, 103 Cal.App.3d 525, 534-535.

consideration." Defendants, however, argue that the conduct does not satisfy the statutory definition of prostitution because courts have defined "lewd act," which was not defined by the Legislature, as requiring the touching between a customer and a prostitute.

Hence, it appears that, under the current status of the law in California, the definition of prostitution is susceptible to different interpretations.

■ "When language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute."[17]

" 'Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability. [Citation.] ("[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity").' [Citation.] . . . [C]riminal penalties, because they are particularly serious and opprobrious, merit heightened due process protections for those in jeopardy of being subject to them, including the strict construction of criminal statutes."[18]

■ Keeping the rule of lenity in mind, we shall determine whether the sexual conduct that occurred at the Flesh Club constitutes "lewd acts" to fit the definitional requirement of "prostitution".

### 3. *The Sexual Conduct Alleged Herein Does Not Constitute Prostitution*

In this case, the evidence is undisputed. There was evidence that the dancers touched each other's genitals; there was no evidence, however, that the dancers touched either of the officers except to shake hands with them. The issue, therefore, is whether a customer's observation of sexual conduct between two dancers, in exchange for consideration, constitutes a lewd act for purposes of prostitution.

---

[17]*People v. Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].

[18]*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 313 [58 Cal.Rptr.2d 855, 926 P.2d 1042], citing *Liparota v. United States* (1985) 471 U.S. 419, 427 [105 S.Ct. 2084, 2089, 85 L.Ed.2d 434, 441].

*Hill* stated that "bodily contact between the prostitute and the customer is required" to be a lewd act.[19] In *Hill*, the defendant was charged with pimping and pandering.[20] An undercover officer testified that the defendant agreed to supply him with a teenage boy in exchange for $300. The defendant showed up at the officer's hotel room with a teenage boy, commented that the boy "knew what to do sexually," and accepted a payment of $300. After the defendant left, the boy offered to engage in either oral copulation or sodomy.[21] The defendant testified that it was his understanding that the officer wanted to use the boy only as a nude model for a photo session.[22]

The appellate court reversed because the trial court had defined "prostitution" for the jury in terms of "lewd or dissolute acts" without defining "lewd or dissolute acts." Thus, the *Hill* jury was never informed that "to constitute 'prostitution,' the genitals, buttocks, or female breast, of either the prostitute or the customer must come in contact with some part of the body of the other for the purpose of sexual arousal or gratification of the customer or of the prostitute."[23] The court then stated that "[s]uch bodily contact *between the prostitute and the customer* is required to satisfy the constitutional mandate of *Pryor* in light of the provisions of Penal Code section 647, subdivision (b), which define 'prostitution' as including 'any *lewd* act *between persons* for money or other consideration.' (Italics added.)"[24]

After *Hill* came *Freeman*. In *Freeman*, in the course of producing and directing an "adult" film called Caught from Behind, Part II, the defendant hired and paid actors and actresses to perform sex acts, including sexual intercourse, oral copulation, and sodomy. As a result, the defendant was convicted of pandering.[25]

In *Freeman*, the Supreme Court relied upon *Hill*'s definition of prostitution, that " 'the genitals, buttocks, or female breast, *of either the prostitute or the customer* must come in contact with some part of *the body of the other* for the purpose of sexual arousal or gratification of the customer or of the prostitute.' "[26] *Freeman* itself, however, did not analyze whether any contact between the prostitute and the customer was necessary. Instead, *Freeman* decided the case based on the second prong of *Hill*'s definition: That there

---

[19]*Hill, supra*, 103 Cal.App.3d 525, 535.

[20]*Hill, supra*, 103 Cal.App.3d 525, 528.

[21]*Hill, supra*, 103 Cal.App.3d 525, 528-529.

[22]*Hill, supra*, 103 Cal.App.3d 525, 529-530.

[23]*Hill, supra*, 103 Cal.App.3d 525, 534-535.

[24]*Hill, supra*, 103 Cal.App.3d 525, 535, italics added.

[25]*Freeman, supra*, 46 Cal.3d 419, 422.

[26]*Freeman, supra*, 46 Cal.3d 419, 424, original italics omitted, new italics added, quoting *Hill, supra*, 103 Cal.App.3d 525, 534-535.

was no evidence that the defendant paid the acting fees for the *purpose of sexual arousal or gratification* of the defendant or the actors.[27]

Applying the *Hill* definition of prostitution, the Supreme Court commented: "One contention of defendant is that requisite to the crime of prostitution is the existence of a 'customer' and there being no 'customer' here, no prostitution was involved and therefore no procurement for purposes of prostitution and no pandering. We find it unnecessary to address that contention. Whether or not prostitution must always involve a 'customer,' it is clear that in order to constitute prostitution, the money or other consideration must be paid for the purpose of sexual arousal or gratification."[28] It therefore concluded: "There is no evidence that defendant paid the acting fees for the purpose of sexual arousal or gratification, his own or the actors.' Defendant, of course, did not himself participate in any of the sexual conduct. Defendant, the payor, thus did not engage in either the requisite conduct nor did he have the requisite mens rea or purpose to establish procurement for purposes of prostitution."[29]

Then, the court went on to hold, alternatively, that: "[E]ven if defendant's conduct could somehow be found to come within the definition of 'prostitution' literally, the application of the pandering statute to the hiring of actors to perform in the production of a nonobscene motion picture would impinge unconstitutionally upon First Amendment values."[30]

Hence, the definition of "lewd acts," as it would apply to the facts in this case, is unclear.

The statute, section 647, subdivision (b), defines "prostitution" as "any lewd act between persons for money or other consideration." Although this broad definition of "prostitution" could plausibly be interpreted to include sexual conduct between two dancers, for money or other consideration from a customer, *Hill* and *Freeman* support a different interpretation: That a lewd act, an element of prostitution, requires touching between the prostitute and the customer, even if the customer is simply an observer of sexual acts between two prostitutes.

We recognize that in *Hill*, the only two persons involved were the male prostitute and the undercover officer, and the court was not confronted with a situation where a customer would not be involved in sexual activity with

[27]*Freeman, supra,* 46 Cal.3d 419, 424-425.
[28]*Freeman, supra,* 46 Cal.3d 419, 424, italics omitted.
[29]*Freeman, supra,* 46 Cal.3d 419, 424-425.
[30]*Freeman, supra,* 46 Cal.3d 419, 425.

the prostitute. We also recognize that, although *Freeman* adopted the *Hill* definition of "lewd act," *Freeman* limited its application of the *Hill* definition to the second prong—whether the defendant paid the acting fees for the *purpose of sexual arousal or gratification* of the defendant or the actors. Nevertheless, there are no reported cases that deviate from or disapprove of the definition of "lewd act" espoused in *Hill* and relied upon in *Freeman*.

The dissent urges us to ignore *Hill*'s definition of prostitution as requiring contact between a prostitute and a customer, and *Freeman*'s sole citation to the *Hill* definition of "prostitution" under section 647, subdivision (b), because it "is sheer dictum."[31] We disagree.

Black's Law Dictionary defines "dictum" as follows: "A statement, remark, or observation. *Gratis dictum*; a gratuitous or voluntary representation; one which a party is not bound to make. *Simplex dictum*; a mere assertion; an assertion without proof."[32] In *Hill*, the court specifically analyzed the definition of prostitution under section 647, subdivision (b). Thereafter, *Hill* concluded that the words, " 'any *lewd* act *between persons* for money or other consideration' "[33] required "bodily contact between the prostitute and the customer . . . to satisfy the constitutional mandate of *Pryor*."[34] The definition of prostitution was central to the resolution of the holding in *Hill*. Hence, we cannot agree with the dissent that the definition of prostitution in *Hill* was "sheer dictum."

 In light of the rule of lenity, that criminal statutes must " 'provide fair warning concerning conduct rendered illegal,' "[35] and the policy of California "to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit[,] . . . [d]efendant[s] [are] entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute."[36] Given the ambiguity in the definition of "lewd act," defendants are entitled to a resolution of the ambiguity in their favor: "To the extent that the language or history of [a statute] is uncertain, this 'time-honored interpretive guideline' serves to ensure both that there is fair warning of the boundaries

---

[31]Dissenting opinion, *post*, at page 441.
[32]Black's Law Dictionary (6th ed. 1990) page 454, column 2.
[33]*Hill, supra*, 103 Cal.App.3d 525, 535, quoting section 647, subdivision (b).
[34]*Hill, supra*, 103 Cal.App.3d 525, 535.
[35]*People ex rel. Lungren v. Superior Court, supra*, 14 Cal.4th 294, 313.
[36]*People v. Overstreet, supra*, 42 Cal.3d 891, 896.

of criminal conduct and that legislatures, not courts, define criminal liability. [Citations.]"[37]

Hence, we conclude that the definition of prostitution under section 647, subdivision (b), as interpreted by *Hill* and applied by *Freeman*, requires sexual contact between the prostitute and the customer. In this case, it is undisputed that there was no sexual contact between the dancers and the officers. Without sexual contact, there can be no prostitution. Without the underlying crime of prostitution, there can be no pimping or pandering.

The People point to a Wisconsin case, *State v. Kittilstad*,[38] in support of the claim that the alleged conduct constitutes prostitution under California's statute. *Kittilstad* is distinguishable.

In *Kittilstad*, the defendant, a Lutheran minister, let a series of young men stay at his home while they were studying at a local college. He repeatedly offered each of them money if they would have sex with a woman and let him watch. Each of them refused.[39] The Wisconsin Supreme Court held that these actions, as shown at the preliminary hearing, supported a charge of solicitation of prostitution.[40] The defendant argued the conduct he had allegedly solicited did not constitute prostitution because he was only "attempting to facilitate voyeurism, not the providing of sex for a fee."[41] The court disagreed: "[U]nder the defendant's interpretation [the solicitation statute] would not apply to a situation in which a father pays someone to have sex with his son or a businessman pays someone to have sex with his client. [Citation.] [¶] The exclusion of these situations from the reach of the broad language of [the solicitation statute] would be unreasonable."[42] "Although it may be true that the crime of prostitution more typically involves the direct and knowing exchange of money by one person in return for sex from the other person, the plain language of [the prostitution statute] extends to other situations."[43]

Wisconsin's statute states that a person is guilty of prostitution if that person "*requests to commit* an act of sexual gratification, in public or in private, involving the sex organ or one person and the mouth or anus of another for anything of value" or "*requests to commit* an act of sexual contact

---

[37]*Crandon v. United States* (1990) 494 U.S. 152, 158 [110 S.Ct. 997, 1001-1002, 108 L.Ed.2d 132, 140.].

[38]*State v. Kittilstad* (1999) 231 Wis.2d 245 [603 N.W.2d 732] (*Kittilstad*).

[39]*Kittilstad, supra*, 603 N.W.2d 732, 734-735.

[40]*Kittilstad, supra*, 603 N.W.2d 732, 737-740.

[41]*Kittilstad, supra*, 603 N.W.2d 732, 738.

[42]*Kittilstad, supra*, 603 N.W.2d 732, 738-739.

[43]*Kittilstad, supra*, 603 N.W.2d 732, 739.

for anything of value."[44] Hence, under the Wisconsin statute, the conduct alleged in *Kittilstad* constituted prostitution because the defendant *requested* that the young men engage in sexual conduct in exchange for money. If California's statute contained the language that was included in Wisconsin's statute, the sexual conduct alleged herein could constitute prostitution. California's statute, however, is different. Section 647, subdivision (b) simply states that prostitution includes "any lewd act between persons for money or other consideration." And as discussed above, California courts have defined lewd acts as requiring physical contact between the prostitute and customer.

Moreover, the People's reliance on *State v. Taylor*,[45] an Arizona case, is also misplaced. In *Taylor*, undercover officers investigated activities at the Ellwest Stereo Theatre in Phoenix, Arizona, which " 'caters to the sexual fantasies of the desperate.' "[46] Ellwest contained film booths with graphically sexual movies and an arena where "dancers" displayed and fondled their vaginas and breasts. Additionally, the theatre offered shows in a closet-sized booth which had "a clear glass window, a telephone, a trash can for used tissues, one coin slot for tokens, and a larger slot for bills."[47] Customers could view nude dancers from a distance of two feet through the window. A dancer advised a customer by phone that she would perform for a tip of $20. A customer could engage other women in sex acts for an additional $20 for each person.[48] One of the dancers, who was also the manager of Ellwest, was convicted of four prostitution-related crimes.[49] The Arizona appellate court affirmed the defendant's convictions because the Arizona statute "does not require sexual contact *with* the customer; it was written sufficiently broadly to encompass a sexual transaction for a customer who engages only as voyeur."[50]

*Taylor* is not instructive because the statute defining prostitution in Arizona differs from California's statute. "Arizona defines 'prostitution' as 'engaging in or agreeing or offering to engage in sexual conduct with another person under a fee arrangement *with that person or any other person.*' [Citation.]"[51] Arizona's statute is clear, and the sexual conduct that occurred at the Flesh Club, if prosecuted in Arizona, would clearly constitute prostitution. California's statute, however, defines prostitution as "any lewd act between persons for money or other consideration." The phrase "lewd

---

[44]Wisconsin Statutes, Crimes, section 944.30, subdivisions (2) and (5), italics added.
[45]*State v. Taylor* (1990) 167 Ariz. 429 [808 P.2d 314] (*Taylor*).
[46]*Taylor, supra,* 808 P.2d 314, 315.
[47]*Taylor, supra,* 808 P.2d 314, 315.
[48]*Taylor, supra,* 808 P.2d 314, 315-316.
[49]*Taylor, supra,* 808 P.2d 314, 316.
[50]*Taylor, supra,* 808 P.2d 314, 316.
[51]*Taylor, supra,* 808 P.2d 314, 316.

act" has been interpreted to require sexual contact between the prostitute and the customer. Hence, California's statute was not written "sufficiently broadly to encompass a sexual transaction for a customer who engages only as voyeur."[52]

The dissent argues that two cases, *People ex rel. Van de Kamp v. American Art Enterprises, Inc.*[53] and *People v. Fixler*[54] support its conclusion that prostitution does not require a touching between the customer and the prostitute.

The definition of "prostitution" espoused in *Fixler*, and adopted in *American Art Enterprises*, was clarified in *Hill*. As the dissent points out, *Fixler* held that prostitution is committed when someone pays two models for the purpose of photographing the models having sex with each other.[55] Four years later, *Hill* revisited the definition of prostitution. *Hill* recognized that three years after *Fixler*, the Supreme Court defined "lewd conduct," under section 647, subdivision (a), as conduct involving " 'the touching of the genitals, buttocks, or female breast for the purpose of sexual arousal, gratification, annoyance or offense, . . .' "[56] *Hill* then went on to recognize that prostitution, proscribed by section 647, subdivision (b), constituted an essential element of the crimes of pimping and pandering under sections 266h and 266i. Thereafter, the court stated that "[a]pplication of the *Pryor* holding to the concept of a 'lewd' or 'dissolute' act as a part of the term 'prostitution' involved in Penal Code sections 266h and 266i, compels a decision that, for a 'lewd' or 'dissolute' act to constitute 'prostitution,' the genitals, buttocks, or female breast, of either the prostitute or the customer must come in contact with some part of the body of the other for the purpose of sexual arousal or gratification of the customer or of the prostitute. Such bodily contact between the prostitute and the customer is required to satisfy the constitutional mandate of *Pryor* in light of the provisions of Penal Code section 647, subdivision (b), which define 'prostitution' as including 'any *lewd* act *between persons* for money or other consideration.' (Italics added.)"[57]

Moreover, as the dissent also recognizes, the Supreme Court in *Freeman* disapproved of *Fixler* and *American Art Enterprises* to the extent that the cases held "that the payment of wages to an actor or model who performs a

---

[52]*Taylor, supra,* 808 P.2d 314, 316.
[53]*People ex rel. Van de Kamp v. American Art Enterprises, Inc.* (1977) 75 Cal.App.3d 523 [142 Cal.Rptr. 338] (*American Art Enterprises*).
[54]*People v. Fixler* (1976) 56 Cal.App.3d 321 [128 Cal.Rptr. 363] (*Fixler*).
[55]Dissenting opinion, *post*, at page 443.
[56]*Hill, supra,* 103 Cal.App.3d 525, 534, quoting *Pryor, supra,* 25 Cal.3d 238, 256.
[57]*Hill, supra,* 103 Cal.App.3d 525, 534-535.

sexual act in filming or photographing for publication constitutes prostitution regardless of the obscenity of the film or publication so as to support a prosecution for pandering under section 266i."[58] Also, in defining prostitution, *Freeman* looked to the definitions espoused in *Pryor* and *Hill*, not to the definitions in *Fixler* or *American Art Enterprises*.

Therefore, the validity of the definition of prostitution pronounced in *Fixler* and *American Art Enterprises*, at best, is questionable. Given the different definitional interpretations the courts have adopted for "prostitution," the rule of lenity applies. Hence, defendants are "entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute."[59]

We conclude that, because there were no lewd acts, i.e. no touching between the dancers and the customers, the conduct alleged herein failed to constitute "prostitution" under section 647, subdivision (b). Without the underlying crime of prostitution, there can be no pimping and pandering under sections 266h and 266i.

Moreover, the dissent alludes to public policy considerations and points to a number of hypotheticals in which a person pays to watch sex being performed. The dissent contends that "regardless of who the payor is, there is an exchange of sex for money. That is the quintessence of prostitution."[60] The dissent's broad definition of prostitution may implicate public policy considerations.

For better or worse, our society has developed a tolerance for a wide variety of exchanges of sex for money. By our opinion, we are not approving of the acts performed at the Flesh Club. Nor do we approve of the other manifestations of sex for money with which our society now contends. Currently, there are numerous ways in which a person can pay money and see a performance of sex. Many of these circumstances are admittedly remote: pornographic home videos, pornographic computer websites, pay for view television, peep show theaters, and movie houses. Not so remote are the sex acts performed as a part of stage plays in front of live audiences. The performances in this case, by two women in a booth in a "theater," is different from the other performances only in degree. The dissent's definition of prostitution would include not only the Flesh Club presentations but any sex act performed on stage and, in theory, other presentations as well.

As objectionable as the performances are in this case, we are loath to find a public policy requirement that the acts be criminalized under existing law.

[58]*Freeman, supra*, 46 Cal.3d 419, 428, footnote 6.
[59]*People v. Overstreet supra*, 42 Cal.3d 891, 896.
[60]Dissenting opinion, *post*, at page 443.

Our Supreme Court found no public policy reason in *Freeman* to criminalize sex acts being recorded on film for distribution to potentially millions of people of all ages. While we offer no defense for the performances at the Flesh Club, at least it can be said that they are given to a small audience in an establishment which limits its clientele.

### 4. *There Was No Evidence That Defendants Had Knowledge About a Dancer's Offer to Commit Prostitution*

We agree with the dissent that section 647, subdivision (b) does not require a completed act of prostitution, and that pimping and pandering do not require a completed act of prostitution. ■ We, however, disagree with the dissent's conclusion that one of the dancer's offer of a "hand job" to an officer was sufficient to prove a pimping or pandering charge against defendants.

Pimping, under section 266h, subdivision (a), is committed by "any person who, *knowing* another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of the person's prostitution, . . ." The dissent acknowledges that pimping requires a defendant know that another person is a prostitute.[61]

Moreover, pandering, under section 266i, subdivision (a)(4), is committed by any person who "[b]y promises, threats, violence or by any device or scheme, causes, induces, persuades or encourages an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, to remain therein as an inmate." Hence, pandering also requires that a defendant encourage prostitution, whether attempted or completed.

In this case, there is absolutely no evidence that defendants had knowledge that Malibu offered a "hand job" to Officer Aranda. At the preliminary hearing, Officer Aranda testified about his and Officer Valdivia's investigation of the Flesh Club on May 22, 2000. On that day, after Malibu and Veronica engaged in sexual activity and Officer Valdivia paid the dancers for their performance, Malibu stated that she was willing to perform a hand job on Officer Aranda. No further evidence was presented to follow up on Officer Aranda's testimony regarding this "hand job" offer.

Officer Aranda also testified about the officers' investigation of the Flesh Club on May 26, 2000. On that date, Officer Valdivia and Malibu again discussed Malibu performing "a hand job or masturbation" on Officer Aranda. Officer Aranda went on to state that neither defendant walked by or

---

[61]*People v. McNulty* (1988) 202 Cal.App.3d 624, 630 [249 Cal.Rptr. 22], italics added.

checked on the dancers while they were performing sexual activities in the VIP booth that entire evening. Again, there was no further testimony regarding Malibu's offer of a "hand job." No charges were filed for acts that occurred on May 26, 2000.

Hence, there was no evidence presented that either defendant observed Malibu's offer to give Officer Aranda a "hand job" on either May 22 or May 26. At most, Officer Aranda testified that defendants came by and saw the dancers when they were engaged in sexual activities with each other.

Nevertheless, the dissent argues that Malibu's offer to commit prostitution supports charges of pimping and pandering simply because defendants had a general awareness of sex acts occurring at the club. The dissent's reference to this general knowledge, however, has no applicability to the specific acts of pimping and pandering alleged in this felony complaint. The pimping and pandering charges in the complaint relate to specific "dancers"—Angel, Cat, Veronica, Anaya and Malibu, and specific dates—May 4, 2000, and May 22, 2000, not other sexual conduct that may have occurred at the club. In fact, the focus of this case has been that prostitution occurred at the Flesh Club *because* of the sexual acts between the dancers: throughout the preliminary hearing, briefing on appeal, and oral argument, the prosecution vociferously argued that the sexual acts that occurred between the dancers constituted prostitution.

In sum, although Malibu's offer of a "hand job" could constitute prostitution, that offer—standing alone—is insufficient to support a charge of pimping or pandering because there was no evidence that defendants knew that Malibu had made such an offer. As stated above, defendants' knowledge of the prostitution, as alleged in the felony complaint, is an essential element of pimping and pandering.

### DISPOSITION

The order to show cause is discharged and the petition for writ of prohibition is granted. Let a peremptory writ of mandate issue directing respondent, the Superior Court of San Bernardino County, to set aside its order denying defendants' motion to set aside the information under section 995, and to enter a new order granting the motion and setting aside the information.

Gaut, J., concurred.

**RICHLI, Acting P. J.**—I respectfully dissent. The Legislature has broadly defined "prostitution" as "any lewd act between persons for money or other

consideration," (Pen. Code, § 647, subd. (b)) without specifying who the persons must be. The majority concludes, based on a dictum in *People v. Hill* (1980) 103 Cal.App.3d 525 [163 Cal.Rptr. 99], that this language is ambiguous. The "rule of lenity," however, applies only "[w]hen . . . the *language of a penal law* is reasonably susceptible of two interpretations . . . ." (*People v. Robles* (2000) 23 Cal.4th 1106, 1115 [99 Cal.Rptr.2d 120, 5 P.3d 176], italics added.) One errant dictum doth not an ambiguity make.

I would hold that the statutory definition of "prostitution" does require a sexual contact between at least two people, but not necessarily between the prostitute and the customer. In response to defendants' other contentions, I would also hold that the pimping and pandering statutes do not necessarily require a completed act of prostitution. The pimping statute can be satisfied by proof that the defendant derived support from money paid for another's agreement to perform an act of prostitution. Here, regardless of Officer Valdivia's actual intent, there was sufficient evidence that he paid the women for agreeing to perform an act of prostitution. Similarly, the pandering statute can be satisfied by proof that the defendant caused an inmate of a place where prostitution is encouraged or allowed to remain therein. Once again, regardless of Officer Valdivia's actual intent, there was sufficient evidence that prostitution was allowed or encouraged in the Flesh Club.

I need not repeat here the majority's generally excellent summary of the facts. I merely add that, no matter what the women whom the majority describes as "dancers" did on the main stage, their activities once inside the booth were not remotely terpsichorean. These included oral copulation, digital vaginal penetration, and vaginal penetration with a vibrator. Also, there was evidence that dancers at the Flesh Club sometimes made sexual contact with other customers and that defendants knew dancers sometimes made sexual contact with customers. Indeed, the dancer whose nom de guerre was "Malibu" offered to give Officer Aranda a "hand job," but he declined.

I

## THE DEFINITION OF "PROSTITUTION" FOR PURPOSES OF PIMPING AND PANDERING

### A. *Standard of Review.*

It should be borne in mind that defendants seek review of the trial court's refusal to set aside the information. "Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information.

[Citation.]" (*People v. Lewis* (1990) 50 Cal.3d 262, 289 [266 Cal.Rptr. 834, 786 P.2d 892].) " ' " 'Evidence that will justify a prosecution need not be sufficient to support a conviction. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]' " ' [Citations.]" (*Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1027 [13 Cal.Rptr.2d 551, 839 P.2d 1059], quoting *People v. Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609], quoting *Taylor v. Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131], quoting *Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) I agree with the majority, however, that we review questions of statutory interpretation de novo.

B. *The Touching Requirement.*

My analysis, like the majority's, begins with the seminal case (no pun intended) of *People v. Freeman* (1988) 46 Cal.3d 419 [250 Cal.Rptr. 598, 758 P.2d 1128]. There, the Supreme Court noted that *People v. Hill, supra*, 103 Cal.App.3d 525 had defined "lewd act" for purposes of prostitution so as to require that " 'the genitals, buttocks, or female breast, of either the prostitute or the customer must come in contact with some part of the body of the other for the purpose of sexual arousal or gratification of the customer or of the prostitute.' " (*Freeman, supra*, at p. 424, italics omitted, quoting *Hill, supra*, at pp. 534-535.)

*Freeman* then held that "in order to constitute prostitution, the money or other consideration must be paid *for the purpose of sexual arousal or gratification.*" (*People v. Freeman, supra*, 46 Cal.3d at p. 424.) Thus, it adopted that portion of the *Hill* definition which required such a sexual purpose. However, it did not adopt that portion of the *Hill* definition which required the prostitute to touch the customer. To the contrary, it expressly refused to decide "[w]hether or not prostitution must always involve a 'customer' . . . ." (*Freeman, supra*, at p. 424.)

In *Hill*, the defendant accepted $300 for delivering a boy to a customer who turned out to be an undercover police officer. (*People v. Hill, supra*, 103 Cal.App.3d at p. 528-529.) The defendant claimed to have been assured that all the customer had in mind was "a nude photo session." (*Id.*, at p. 530.) Nevertheless, he was convicted of pimping and pandering. (*Id.*, at p. 528.) The appellate court reversed because the trial court had defined "prostitution" in terms of "lewd or dissolute acts between persons" but had never defined "lewd or dissolute acts."

First, it noted that "lewd *conduct*," for purposes of a related statute, Penal Code section 647, subdivision (a), had been held to require " 'the touching of

the genitals, buttocks, or female breast for the purpose of sexual arousal, gratification, annoyance or offense . . . .' " (*People v. Hill, supra,* 103 Cal.App.3d at p. 534, fn. omitted, quoting *Pryor v. Municipal Court* (1979) 25 Cal.3d 238, 256 [158 Cal.Rptr. 330, 599 P.2d 636].) It held that, to avoid vagueness, "lewd *act*," for purposes of Penal Code section 647, subdivision (b) had to be defined similarly. (*Hill, supra,* at p. 534.)

Next, it noted that Penal Code section 647, subdivision (a) could be violated by the lewd conduct of a single person. By contrast, Penal Code section 647, subdivision (b) required a lewd act "between persons." (*People v. Hill, supra,* 103 Cal.App.3d at p. 534.) It therefore *modified* the definition. It held: "[F]or a 'lewd' or 'dissolute' act to constitute 'prostitution,' the genitals, buttocks, or female breast[] of either the prostitute or the customer must come in contact with some part of the body of the other for the purpose of sexual arousal or gratification of the customer or of the prostitute." (*Id.,* at pp. 534-535.) It concluded that the trial court's failure to define "lewd and dissolute acts" was prejudicial because the jury could have found the defendant guilty even if it believed his testimony that he did not expect the customer and the boy to make sexual contact. (*Id.,* at p. 535.)

There was no evidence in *Hill* of any sexual contact, actual or contemplated, between the boy and anybody *other than* the customer. *Hill* therefore defined a "lewd act" in terms of a contact between the prostitute and the customer. But this portion of *Hill*'s definition of prostitution is sheer dictum. "It is axiomatic that an opinion is not authority for an issue not considered therein. [Citation.]" (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 243 [45 Cal.Rptr.2d 207, 902 P.2d 225].)

The statute itself requires only a "lewd act between persons for money or other consideration." (Pen. Code, § 647, subd. (b).) It does not specify that one of those persons must be the prostitute and another must be the customer. Indeed, the majority concedes that "this broad definition of prostitution could plausibly be interpreted to include sexual conduct between two dancers, for money or other consideration from a customer . . . ." (Maj. opn., *ante,* at p. 431.) It further concedes that the *Hill* definition requiring a touching between the prostitute and the customer was unnecessary to the decision and that *Freeman* declined to adopt any such requirement. (Maj. opn., *ante,* at pp. 431-432.) Nevertheless, it concludes that, in light of *Freeman* and *Hill,* the statute is so ambiguous as to trigger the "rule of lenity."

Not so. "[T]his rule ' " " 'is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable.' . . .' "

[Citations.] Courts will not construe an ambiguity in favor of the accused if "such a construction is contrary to the public interest, sound sense, and wise policy." [Citation.]'" (*People v. Williams* (1996) 49 Cal.App.4th 1632, 1638-1639 [57 Cal.Rptr.2d 448], quoting *In re Ramon A.* (1995) 40 Cal.App.4th 935, 941 [47 Cal.Rptr.2d 59].) The statute itself is clear. Applying it to this case, there clearly were "lewd acts" (i.e., genital touching) "between persons" (i.e., the dancers).

*Hill* could not create an ambiguity that was not already in the statute. For example, in *People v. Ledesma* (1997) 16 Cal.4th 90 [65 Cal.Rptr.2d 610, 939 P.2d 1310], the Supreme Court noted that several appellate courts had construed Penal Code section 12022.5 to mean that, when a defendant is convicted of assault with a firearm, imposition of a personal firearm use enhancement was discretionary; several others had held it was mandatory. (*Ledesma, supra,* at p. 93.) The Supreme Court held it was mandatory. (*Id.,* at pp. 93-102.) The defendant argued that the court should apply the rule of lenity. It refused to do so, because it found that Penal Code section 12022.5 "is not ambiguous when considered in historical perspective." (*Ledesma, supra,* at p. 101.) Thus, *Ledesma* teaches that multiple appellate opinions interpreting a statute and reaching opposite conclusions do not make that statute ambiguous. A fortiori, the one vagrant dictum in *Hill* cannot suffice to make the present statute ambiguous.

"'Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability. [Citation.] ("[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity").' [Citation.]" (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 313 [58 Cal.Rptr.2d 855, 926 P.2d 1042], quoting *Liparota v. United States* (1985) 471 U.S. 419, 427 [105 S.Ct. 2084, 2089, 85 L.Ed.2d 434].) However, as I will discuss in more detail in part II, *post,* there is no due process right to rely on dicta. Moreover, if an otherwise clear statute could be deemed ambiguous based on a single court's erroneous dictum, the rule of lenity would be turned on its head—the courts would be subverting the Legislature's exclusive power to define crimes.

Just as I find no basis in the language of the statute for the majority's requirement that the customer touch the prostitute, I also find none in public policy. Under the majority's interpretation, if a father paid a woman to have sex with his son, or a businessman paid a woman to have sex with his client, there would be no prostitution, even though there would be if the son or the

client paid the woman directly. Similarly, if a man paid another man to have sex with his wife while he watched, for his own sexual gratification, there would be no prostitution. If, however, the wife paid a man to have sex with her while her husband watched, so her husband could obtain sexual gratification, there would be prostitution. In each of these situations, regardless of who the payor is, there is an exchange of sex for money. That is the quintessence of prostitution.

The majority also reasons that "there are no reported cases that deviate from or disapprove of the definition of 'lewd act' espoused in *Hill* and relied upon in *Freeman*." (Maj. opn., *ante*, at p. 432.) Something similar could be said in every case of first impression—by definition, there are no reported cases that disagree with *whatever* the majority decides. Actually, however, two reported cases have held that, where someone pays two models so he or she can photograph them having sex with each other, prostitution is committed. (*People ex rel. Van de Kamp v. American Art Enterprises, Inc.* (1977) 75 Cal.App.3d 523, 529 [142 Cal.Rptr. 338]; *People v. Fixler* (1976) 56 Cal.App.3d 321, 325 [128 Cal.Rptr. 363].) Admittedly, *Freeman* expressly disapproved both of these cases. (*People v. Freeman, supra,* 46 Cal.3d at p. 428 & fn. 6.) It disapproved them, however, only "[t]o the extent [they] hold that the payment of wages to an actor or model who performs a sexual act in filming or photographing for publication constitutes prostitution *regardless of the obscenity of the film or publication . . . .*" (*Id.,* at p. 428, fn. 6, italics added.) That is, it disapproved them only to the extent that they conflicted with the First Amendment aspect of the opinion. Otherwise they remain good law. Here, as I will discuss further below, defendants do not rely on the First Amendment. There was substantial evidence that the dancers' "performances" were obscene; defendants do not argue otherwise. Accordingly, *Van de Kamp* and *Fixler* both support my conclusion that prostitution does not require a touching between the customer and the prostitute.

### C. *The Intent Requirement.*

Defendants also argue, alternatively, that under *Freeman* prostitution requires that "the money or other consideration must be paid for the purpose of sexual arousal or gratification." (*People v. Freeman, supra,* 46 Cal.3d at p. 424.) They claim Officer Valdivia's only purpose was to investigate a suspected crime; thus, there was no evidence that he was seeking sexual arousal or gratification, either for himself or for the dancers. They conclude: "[T]he dancers did not violate Penal Code [s]ection 647(b) . . . . If the dancers did not violate Penal Code [s]ection 647(b) then [defendants] cannot be guilty of pimping and pandering as a matter of law."

Penal Code section 647, subdivision (b), however, has been amended since *Freeman* was decided. In 1983, when the offenses in *Freeman* were committed (*People v. Freeman, supra,* 46 Cal.3d at p. 422), it provided that disorderly conduct was committed by any person "[w]ho solicits or who engages in any act of prostitution. As used in this subdivision 'prostitution' includes any lewd act between persons for money or other consideration." (Pen. Code, former § 647, subd. (b), as amended by Stats. 1977, ch. 426, § 1, p. 1441.)

In 1986, it was amended to provide, as it does now, that disorderly conduct is committed by any person "[w]ho solicits *or who agrees to engage in* or who engages in any act of prostitution. *A person agrees to engage in an act of prostitution when, with specific intent to so engage, he or she manifests an acceptance of an offer or solicitation to so engage, regardless of whether the offer or solicitation was made by a person who also possessed the specific intent to engage in prostitution. No agreement to engage in an act of prostitution shall constitute a violation of this subdivision unless some act, beside the agreement, be done within this state in furtherance of the commission of an act of prostitution by the person agreeing to engage in that act.* As used in this subdivision, 'prostitution' includes any lewd act between persons for money or other consideration." (Pen. Code, § 647, subd. (b), as amended by Stats. 1986, ch. 1276, § 1, pp. 4457-4458, italics added.)

Thus, Penal Code section 647, subdivision (b), as amended, does not require a completed act of prostitution. A would-be prostitute can violate it merely by agreeing to engage in an act of prostitution. This is true even if the ostensible customer lacks the intent necessary for a completed act of prostitution. I may therefore assume there was no evidence that Officer Valdivia intended that he or the dancers be sexually aroused or gratified. I may further assume that, because he lacked this intent, the sexual acts did not constitute "lewd acts" within the statutory definition of "prostitution." Even if so, however, the dancers had no way of *knowing* that Officer Valdivia lacked such an intent. As far as they could tell, he was the usual "John," with a John's usual intent. It follows that, even assuming Officer Valdivia's hidden intent prevented there from being a completed act of prostitution, there was sufficient evidence that the dancers violated Penal Code section 647, subdivision (b).

However, I do not rest my opinion on this point. Despite defendants' evident concession that pimping and pandering can be premised on any violation of Penal Code section 647, subdivision (b), the pimping and pandering statutes both speak in terms of "prostitution," not in terms of a violation of Penal Code section 647, subdivision (b). Yet under Penal Code section 647, subdivision (b), as amended, not every violation constitutes

"prostitution." Rather, I believe that, even aside from the amendments to Penal Code section 647, subdivision (b), pimping and pandering do not require a completed act of prostitution.

It is vital to remember that both this case and *Freeman* involve a charge of pandering, not a charge of prostitution as such. The defendant in *Freeman* was charged under Penal Code section 266i, subdivision (a)(1), which applies to " '[a]ny person who: . . . [p]rocures another person for the purpose of prostitution . . . .' " (*People v. Freeman, supra,* 46 Cal.3d at p. 423.) It has long been held that pandering under this subdivision does not require a completed act of prostitution. (*People v. Osuna* (1967) 251 Cal.App.2d 528, 531-532 [59 Cal.Rptr. 559].)

Given the facts in *Freeman,* the prosecution's theory was that the defendant was both the payor and the panderer. Indeed, in a footnote, the Supreme Court questioned whether "the very acting fees by which defendant 'procured' the actors ('for the purpose of prostitution') [could] *also* constitute the payment necessary to establish the 'prostitution' for which the actors are assertedly being 'procured.' " (*People v. Freeman, supra,* 46 Cal.3d at p. 425, fn. 5.) It did not hold, however, that the defendant lacked the intent necessary for *prostitution.* Its crucial holding was that "[d]efendant, the payor, thus did not engage in either the requisite conduct nor did he have the requisite mens rea or purpose *to establish procurement for purposes of prostitution.*" (*Id.,* at p. 425, italics added, fn. omitted.)

Admittedly, the court in *Freeman* reasoned, in part, that "in order to constitute prostitution, the money or other consideration must be paid for the purpose of sexual arousal or gratification." (*People v. Freeman, supra,* 46 Cal.3d at p. 424, italics omitted.) But *Freeman* is virtually unique in that the alleged panderer and the alleged payor were the same person. Thus, if the payor lacked the intent necessary for prostitution, the panderer could not help but be aware of that fact. In the ordinary case, the alleged panderer and the alleged payor are different people. Thus, the panderer can procure a prostitute for the purpose of prostitution, even assuming the payor—unbeknownst to both the panderer and the prostitute—lacks the intent necessary for a completed act of prostitution.

Moreover, here defendants are charged under a different subdivision of the pandering statute than the defendants in *Freeman.* They are charged under Penal Code section 266i, subdivision (a)(4), which applies to any person who causes "an inmate of a house of prostitution, or any other place in which prostitution is encouraged or allowed, to remain therein . . . ." (Pen. Code, § 266i, subd. (a)(4).) Once again, the statute does not require a

completed act of prostitution. Here, the dancers intended to engage in acts of prostitution; they were prevented from doing so, if at all, only by Officer Valdivia's hidden intent. Thus, there was sufficient evidence that the Flesh Club was a place where prostitution was allowed and even encouraged.

At times, the majority opinion seems to accept that pandering requires a completed act of prostitution. (E.g., maj. opn., *ante,* at pp. 424, 427, 433; but see *id.,* at p. 436.) It therefore minimizes the significance of Malibu's offer of a "hand job." Even if, as the majority holds, prostitution requires the prostitute to touch the customer, there was ample evidence that dancers did make sexual contact with other customers and that defendants were aware of this. Thus, her offer to commit prostitution would support a charge of pandering in connection with each date upon which she made this offer.

Defendants are also charged with pimping. Pimping requires that the defendant know that another person is a prostitute. (*People v. McNulty* (1988) 202 Cal.App.3d 624, 630 [249 Cal.Rptr. 22].) A "prostitute" for this purpose is a person who indiscriminately offers to perform sexual intercourse or other lewd acts between persons for hire. (See *People v. Schultz* (1965) 238 Cal.App.2d 804, 812 [48 Cal.Rptr. 328]; *People v. Head* (1956) 146 Cal.App.2d 744, 748 [304 P.2d 761].)

Pimping also requires either (1) deriving support from the earnings of another's act of prostitution or (2) soliciting. (*People v. McNulty, supra,* 202 Cal.App.3d at p. 630.) Under the deriving-support prong of the statute, the prostitute must have earnings from prostitution, and the defendant must knowingly derive support from such earnings. (*People v. Tipton* (1954) 124 Cal.App.2d 213, 217-218 [268 P.2d 196].) Under the soliciting prong of the statute, "there must be either the receipt of compensation for soliciting for a prostitute or the solicitation of compensation for soliciting for a prostitute. [Citation.]" (*People v. McNulty, supra,* 202 Cal.App.3d at p. 630, italics omitted.)

*People v. Dell* (1991) 232 Cal.App.3d 248 [283 Cal.Rptr. 361] indicates that pimping, like pandering, does not necessarily require a completed act of prostitution. In *Dell,* the defendant operated an escort service. During an investigation, undercover officers called the service and requested an escort. The service would ask if the officer was paying by cash or credit card; if he answered that he was paying by credit card, it would verify the card. When the escort arrived, she would obtain payment up front. Next, the officer would get the escort to state that her services included sexual intercourse and/or oral copulation. There is no indication that the officers actually engaged in sex acts with the escorts. Finally, the escorts paid part of their receipts to the defendant's escort service. (*Id.,* at p. 252.)

The defendant was charged with pimping and pandering. (*People v. Dell,* *supra,* 232 Cal.App.3d at p. 251.) The trial court gave jury instructions which defined prostitution as sexual intercourse or any lewd act for money or other consideration. It also defined "lewd act" as " 'any act which involves the touching of the genitals, buttocks or female breast of one person by any part of the body of another person and is done with the intent to sexually arouse or gratify.' " (*Id.,* at p. 263.) During deliberations, the jury asked if an act of prostitution required sexual intercourse. The trial court responded, " 'As long as the person has the specific intent to engage in sexual intercourse for money or other consideration, it is not necessary for the person to so engage in actual intercourse.' " (*Ibid.*)

On appeal, the defendant argued these instructions erroneously allowed the jury to find prostitution even in the absence of any physical contact. (*People v. Dell, supra,* 232 Cal.App.3d at p. 264.) The appellate court disagreed that physical contact was required: "In this case no contradictory evidence was offered to rebut these escorts' intent to accept money for sexual acts. . . . The jury was also correctly informed an actual act of intercourse is not required to be guilty of an act of prostitution. . . . [P]rostitution occurs when the person has the specific intent to engage in either sexual intercourse or lewd acts in exchange for money or other consideration for the purpose of sexual arousal or gratification and takes some step in furtherance of that act." (*Ibid.*) Thus, a person's agreement to engage in an act of prostitution can suffice to render him or her a prostitute, and to render a payment made in consideration of such an agreement the earnings of prostitution.

Here similarly, there can be no doubt that the dancers intended to accept, and did accept, money for the sexual acts. Moreover, there was sufficient evidence that defendants *knew* the dancers had accepted money for the sexual acts. Once again, as far as either the dancers or defendants knew, the dancers completed acts of prostitution. Even assuming that, solely because of Officer Valdivia's hidden intent, they did not, they were "prostitutes," and the money they accepted were the earnings of "prostitution," within the meaning of the pimping statute.

D. *First Amendment Issues.*

In their opening brief, defendants expressly disclaim any reliance on "any First Amendment type of defense." In their reply brief, however, they argue that we should define "prostitution" narrowly to avoid impinging on activity protected by the First Amendment.

"Although constitutional rights are generally said to be personal, a well-established exception is found in the overbreadth doctrine associated with

First Amendment jurisprudence. [Citation.] Under this doctrine, litigants may challenge a statute not because their own rights of free expression are violated, but because the very existence of an overbroad statute may cause others not before the court to refrain from constitutionally protected expression. [Citations.]

"To succeed in a constitutional challenge based on asserted overbreadth, the [challenger] must demonstrate the statute inhibits a substantial amount of protected speech. [Citation.] '[O]verbreadth . . . must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' [Citation.]" (*In re M.S.* (1995) 10 Cal.4th 698, 710 [42 Cal.Rptr.2d 355, 896 P.2d 1365], quoting *Broadrick v. Oklahoma* (1973) 413 U.S. 601, 615 [93 S.Ct. 2908, 2927-2918, 37 L.Ed.2d 830].) "If a statute, on its face, criminalizes both protected and unprotected conduct, it must be narrowly construed to reach only unprotected conduct. [Citation.]" (*People v. Ellison* (1998) 68 Cal.App.4th 203, 210 [80 Cal.Rptr.2d 120].)

Absent a factual record demonstrating the existence of a substantial number of instances in which the statute cannot be applied constitutionally, an overbreadth challenge must fail. (*New York State Club Assn. v. City of New York* (1988) 487 U.S. 1, 14 [108 S.Ct. 2225, 2234-2235, 101 L.Ed.2d 1]; *Williams v. Garcetti* (1993) 5 Cal.4th 561, 578 [20 Cal.Rptr.2d 341, 853 P.2d 507].) In this case, there is no such factual record; and, as already noted, defendants do not claim the First Amendment applies to their own conduct.

Under *Freeman*, as a matter of state law, "lewd acts" do not include live or filmed performances by adults which are not constitutionally obscene (*People v. Freeman, supra,* 46 Cal.3d at pp. 425-430)—i.e., which, taken as a whole, (1) the average person, applying contemporary community standards, would find do not appeal to the prurient interest, or (2) do not depict or describe sexual conduct in a patently offensive way, or (3) have serious literary, artistic, political, or scientific value. (*Miller v. California* (1973) 413 U.S. 15, 24 [93 S.Ct. 2607, 2614-2615, 37 L.Ed.2d 419]; *Bloom v. Municipal Court* (1976) 16 Cal.3d 71, 75-77 [127 Cal.Rptr. 317, 595 P.2d 229].) This standard will obviate most, if not all, potentially unconstitutional applications of the prostitution statute. Here, however, the magistrate could reasonably find that the acts the dancers were paid to perform were constitutionally obscene. Thus, the First Amendment does not require any construction of the prostitution statute that would exclude the dancers' conduct.

## II

## RETROACTIVITY

In their reply brief, defendants also contend that applying the pimping, pandering, and/or prostitution statutes to them would violate due process and ex post facto principles.

" '[A]ny statute " 'which makes more burdensome the punishment for a crime, after its commission' " violates the ex post facto prohibition of the United States Constitution [citation], and its California counterpart. [Citation.] While this limitation is specifically directed to the legislative, not judicial, branch, the same principle applies to judicial decisions. [Citations.] Thus, "[i]f a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect. [Citation.]" [Citations.]' [Citation.]

" 'Not all judicial interpretations of statutes having a retroactive effect are prohibited, however. The United States Supreme Court has explained that the Fifth Amendment forbids only the retroactive application of an "unexpected" or "unforeseeable judicial enlargement of a criminal statute." [Citation.] California case law is in accord. [Citations.]' [Citation.]

" ' "In the case of judicial construction, due process is not violated merely because the language of the statute is being applied to a particular situation for the first time. . . . Nor do due process concerns of fair warning arise where the language of the statute is not being expanded in an unforeseeable manner even though the case is one of first impression and even if dicta in prior decisions suggested a narrower application. . . ." ' [Citation.]" (*People v. James* (1998) 62 Cal.App.4th 244, 274-275 [74 Cal.Rptr.2d 7] [Fourth Dist., Div. Two], quoting *People v. King* (1993) 5 Cal.4th 59, 79-80 [19 Cal.Rptr.2d 233, 851 P.2d 27], *People v. Wharton* (1991) 53 Cal.3d 522, 586 [280 Cal.Rptr. 631, 809 P.2d 290], cert. den. (1992) 502 U.S. 1038 [112 S.Ct. 887, 116 L.Ed.2d 790], and *People v. Taylor* (1992) 7 Cal.App.4th 677, 693 [9 Cal.Rptr.2d 227].)

A holding that prostitution does not require physical contact between the prostitute and the customer is by no means unforeseeable. As already discussed, the applicable statute requires a "lewd act between persons," but it does not specify who those persons must be. The language in *People v. Hill, supra,* 103 Cal.App.3d 525 suggesting that the prostitute had to touch the customer was plainly dictum.

Likewise, a holding that pimping and pandering do not require a completed act of prostitution is not unforeseeable. With respect to pandering, this is already clear. (*People v. Osuna, supra,* 251 Cal.App.2d at pp. 531-532.) Moreover, the language of the pandering statute clearly does not require such an act. The language of the pimping statute arguably is more ambiguous on this point; nevertheless, it has been the law since *People v. Dell, supra,* 232 Cal.App.3d 248 was decided in 1991 that pimping does not require a completed act of prostitution.

Finally, I reject defendants' reliance on an unpublished decision by the Appellate Division of the Superior Court of Orange County, involving a " 'two-girl show' " apparently quite similar to those at the Flesh Club. (*People v. Vang,* No. AP-11529, filed Jan. 12, 2000.) As Witkin notes, "[t]hese *unpublished* decisions can scarcely be regarded as authority." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 926, p. 963; see also Cal. Rules of Court, rule 977(a).) If defendants relied on such "authority," they did so at their peril.

I conclude that the pimping, pandering, and prostitution statutes may constitutionally be applied in this case.

The petition of real party in interest for review by the Supreme Court was denied January 29, 2002. Baxter, J., Werdegar, J., and Brown, J., were of the opinion that the petition should be granted.